(Slip Opinion)	OCTOBER TERM, 2008	1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SHINSEKI, SECRETARY OF VETERANS AFFAIRS *v.* SANDERS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 07–1209.   Argued December 8, 2008—Decided April 21, 2009*

As part of the Department of Veterans Affairs' (VA) statutory duty to help a veteran develop a benefits claim, the Secretary of Veterans Affairs (Secretary) must notify an applicant of any information or evidence that is necessary to substantiate the claim.   38 U. S. C. §5103(a).   VA regulations require the notice to specify (1) what further information is necessary, (2) what portions of that information the VA will obtain, and (3) what portions the claimant must obtain. These requirements are referred to as Type One, Type Two, and Type Three, respectively.

   The Court of Appeals for Veterans Claims (Veterans Court), which hears initial appeals from VA claims decisions, has a statutory duty to "take due account of the rule of prejudicial error."  §7261(b)(2).   It has developed a system for dealing with notice errors, whereby a claimant arguing that the VA failed to give proper notice must explain precisely how the notice was defective.   The reviewing judge will then decide what "type" of notice error the VA committed.   Under the Veterans Court's approach, a Type One error has the "natural effect" of harming the claimant, but Types Two and Three errors do not.   In the latter instances, the claimant must show harm, *e.g.,* by describing what evidence he would have provided (or asked the Secretary to provide) had the notice not been defective, and explaining just how the lack of that notice and evidence affected the adjudication's essential fairness.

   The Federal Circuit, which reviews Veterans Court decisions, re-

_____

   *Together with *Shinseki, Secretary of Veterans Affairs* v. *Simmons,* also on certiorari to the same court (see this Court's Rule 12.4).

jected the Veterans Court's approach and set forth its own framework for determining whether a notice error is harmless. When the VA provides a claimant with a notice that is deficient in *any* respect, the framework requires the Veterans Court to presume that the error is prejudicial and requires reversal unless the VA can demonstrate (1) that the defect was cured by the claimant's actual knowledge or (2) that benefits could not have been awarded as a matter of law. The Federal Circuit applied its framework in both of the present cases.

In respondent Sanders' case, the VA denied disability benefits on the ground that Sanders' disability, blindness in his right eye, was not related to his military service. Sanders argued to the Veterans Court that the VA had made notice errors Type Two and Type Three when it informed him what further information was necessary, but failed to tell him which portions of that information the Secretary would provide and which portions he would have to provide. The Veterans Court held these notice errors harmless, but the Federal Circuit reversed, ruling that the VA had not made the necessary claimant-knowledge or benefits-ineligibilty showing required by the Federal Circuit's framework.

The VA also denied benefits in respondent Simmons' case after finding that her left-ear hearing loss, while service connected, was not severe enough to warrant compensation. Simmons argued to the Veterans Court, *inter alia,* that the VA had made a Type One notice error by failing to notify her of the information necessary to show worsening of her hearing. The court agreed, finding the error prejudicial. Noting that a Type One notice error has the "natural effect" of producing prejudice, the Veterans Court added that its review of the record convinced it that Simmons did not have actual knowledge of what evidence was necessary to substantiate her claim and, had the VA told her more specifically what additional information was needed, she might have obtained that evidence. The Federal Circuit affirmed.

*Held:*

1. The Federal Circuit's harmless-error framework conflicts with §7261(b)(2)'s requirement that the Veterans Court take "due account of the rule of prejudicial error." Pp. 8–15.

(a) That §7261(b)(2) requires the same sort of "harmless-error" rule as is ordinarily applied in civil cases is shown by the statutory words "take due account" and "prejudicial error." Congress used the same words in the Administrative Procedure Act (APA), 5 U. S. C. §706, which is an " 'administrative law . . . harmless error rule,' " *National Assn. of Home Builders* v. *Defenders of Wildlife*, 551 U. S. 644, ___. Legislative history confirms that Congress intended §7261(b)(2) to incorporate the APA's approach. Pp. 8–9.

Syllabus

(b) Three related features, taken together, demonstrate that the Federal Circuit's framework mandates an approach to harmless error that differs significantly from the one normally taken in civil cases. First, the framework is too complex and rigid: In every case involving any type of notice error, the Veterans Court *must* find the error harmful unless the VA demonstrates the claimant's actual knowledge curing the defect or his ineligibility for benefits as a matter of law. An error's harmlessness should not be determined through the use of mandatory presumptions and rigid rules, but through the case-specific application of judgment, based upon examination of the record. See *Kotteakos* v. *United States*, 328 U. S. 750, 760. Second, the framework imposes an unreasonable evidentiary burden on the VA, requiring the Secretary to demonstrate, *e.g.,* a claimant's state of mind about what he knew or the nonexistence of evidence that might significantly help the claimant. Third, the framework requires the VA, not the claimant, to explain why the error is harmless. The burden of showing harmfulness is normally on the party attacking an agency's determination. See, *e.g.*, *Palmer* v. *Hoffman*, 318 U. S. 109, 116. This Court has placed the burden on the Government only when the underlying matter was criminal. See, *e.g., Kotteakos, supra*, at 760. The good reasons for this rule do not apply in the ordinary civil case. Pp. 9–13.

(c) The foregoing analysis is subject to two important qualifications. First, the Court need not, and does not, decide the lawfulness of the Veterans Court's reliance on the "natural effects" of certain kinds of notice errors. Second, although Congress' special solicitude for veterans might lead a reviewing court to consider harmful in a veteran's case error that it might consider harmless in other cases, that is not at issue, and need not be decided here. Pp. 13–15.

2. In Sanders' case, a review of the record demonstrates that the Veterans Court lawfully found the notice errors harmless. The VA's Types Two and Three notice errors did not matter, given that Sanders has pursued his claim for many years and should be aware of why he has been unable to show that his disability is service connected. Sanders has not told the reviewing courts what additional evidence proper notice would have led him to obtain or seek and has not explained how the notice errors could have made any difference.

In Simmons' case, some features of the record suggest that the VA's Type One error was harmless, *e.g.,* that she has long sought benefits and has a long history of medical examinations. But other features, *e.g.*, that her left-ear hearing loss was concededly service connected and has continuously deteriorated over time, suggest the opposite. Given the uncertainties, the Veterans Court should decide whether reconsideration is necessary. Pp. 15–17.

Syllabus

487 F. 3d 881, reversed and remanded; 487 F. 3d 892, vacated and re-
  manded.

    BREYER, J., delivered the opinion of the Court, in which ROBERTS,
C. J., and SCALIA, KENNEDY, THOMAS, and ALITO, JJ., joined.  SOUTER,
J., filed a dissenting opinion, in which STEVENS and GINSBURG, JJ.,
joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 07–1209

ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS, PETITIONER *v.* WOODROW F. SANDERS

ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS, PETITIONER *v.* PATRICIA D. SIMMONS

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[April 21, 2009]

JUSTICE BREYER delivered the opinion of the Court.

In these two civil cases, the Department of Veterans Affairs (VA) denied veterans' claims for disability benefits. In both cases the VA erroneously failed to provide the veteran with a certain kind of statutorily required notice. See 38 U. S. C. §5103(a). In both cases the VA argued that the error was harmless. And in both cases the Court of Appeals for the Federal Circuit, after setting forth a framework for determining whether a notice error is harmless, rejected the VA's argument.

In our view, the Federal Circuit's "harmless-error" framework is too complex and rigid, its presumptions impose unreasonable evidentiary burdens upon the VA, and it is too likely too often to require the Court of Appeals for Veterans Claims (Veterans Court) to treat as harmful errors that in fact are harmless. We conclude that the framework conflicts with established law. See §7261(b)(2) (Veterans Court must "take due account of the rule of prejudicial error").

# I

## A

The law entitles veterans who have served on active duty in the United States military to receive benefits for disabilities caused or aggravated by their military service. The Veterans Claims Assistance Act of 2000 requires the VA to help a veteran develop his or her benefits claim. §5103A. In doing so, the Secretary of Veterans Affairs (Secretary), upon "receipt of" an "application" for benefits, must "notify the claimant . . . of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim." As "part of" the required "notice," the Secretary must also "indicate which portion of" the required "information and evidence . . . is to be provided by the claimant and which portion . . . the Secretary . . . will attempt to obtain." §5103(a).

Repeating these statutory requirements in its regulations, the VA has said it will provide a claimant with a letter that tells the claimant (1) what further information is necessary to substantiate his or her claim; (2) what portions of that information the VA will obtain for the claimant; and (3) what portions the claimant must obtain. 38 CFR §3.159(b) (2008). At the time of the decisions below, the regulations also required the VA to tell the claimant (4) that he may submit any other relevant information that he has available. §3.159(b)(1). (The VA refers to these notice requirements as Type One, Type Two, Type Three, and Type Four, respectively.)

## B

The VA's regional offices decide most claims. A claimant may appeal an adverse regional office decision to the VA's Board of Veterans' Appeals, an administrative board with the power to consider certain types of new evidence.

38 U. S. C. §§7107(b), 7109(a); 38 CFR §20.1304(c). The claimant may seek review of an adverse Board decision in the Veterans Court, an Article I court. And the claimant (or the Government) may appeal an adverse decision of the Veterans Court to the Court of Appeals for the Federal Circuit—but only in respect to certain legal matters, namely, "the validity . . . of any statute or regulation . . . or any interpretation thereof . . . that was relied on" by the Veterans Court in making its decision. 38 U. S. C. §7292.

A specific statute requires the Veterans Court to "take due account of the rule of prejudicial error." §7261(b)(2). In applying this statutory provision, the Veterans Court has developed its own special framework for notice errors. Under this framework, a claimant who argues that the VA failed to give proper notice must explain precisely how the notice was defective. Then the reviewing judge will decide what "type" of notice error the VA committed. The Veterans Court has gone on to say that a Type One error (*i.e.*, a failure to explain what further information is needed) has the "natural effect" of harming the claimant; but errors of Types Two, Three, or Four (*i.e.,* a failure to explain just who, claimant or agency, must provide the needed material or to tell the veteran that he may submit any other evidence available) do not have the "natural effect" of harming the claimant. In these latter instances, the claimant must show how the error caused harm, for example, by stating in particular just "what evidence" he would have provided (or asked the Secretary to provide) had the notice not been defective, and explaining just "how the lack of that notice and evidence affected the essential fairness of the adjudication." *Mayfield* v. *Nicholson*, 19 Vet. App. 103, 121 (2005).

## C

In the first case, Woodrow Sanders, a veteran of World War II, claimed that a bazooka exploded near his face in

1944, causing later blindness in his right eye. His war-time medical records, however, did not indicate any eye problems. Indeed, his 1945 discharge examination showed near-perfect vision. But a 1948 eye examination revealed an inflammation of the right-eye retina and surrounding tissues—a condition that eventually left him nearly blind in that eye. Soon after the examination Sanders filed a claim for disability benefits. But in 1949 the VA denied benefits on the ground that Sanders had failed to show a connection between his eye condition and his earlier military service.

Forty-two years later, Sanders asked the VA to reopen his benefits claim. He argued that the 1944 bazooka explosion had hurt his eye, and added that that he had begun to experience symptoms—blurred vision, swelling, and loss of sight—in 1946. He included a report from a VA doctor, Dr. Joseph Ruda, who said that "[i]t is not inconceivable that" the condition "could have occurred secondary to trauma, as stated by" Sanders. A private ophthalmologist, Dr. Gregory Strainer, confirming that Sanders' right retina was scarred, added that this "[t]ype of . . . injury . . . can certainly be concussive in character." App. C to Pet. for Cert. 26a–27a.

In 1992, the VA reopened Sanders' claim. *Id.*, at 29a. After obtaining Sanders' military medical records, the VA arranged for a further medical examination, this time by VA eye specialist Dr. Sheila Anderson. After examining Sanders' medical history (including records of the examinations made at the time of Sanders' enlistment and discharge), Anderson agreed with the medical diagnosis but concluded that Sanders' condition was not service related. Since Sanders' right-eye "visual acuity" was "20/20" upon enlistment and "20/25" upon discharge, and he had "reported decreased vision only 6 months prior" to his 1948 doctor's "visit," and since "there are no other signs of ocular trauma," Anderson thought that Sanders'

condition "is most likely infectious in nature, although the etiology at this point is impossible to determine." "Based on the documented records," she concluded, "the patient did not lose vision while on active duty." The VA regional office denied Sanders' claim. *Ibid.*

Sanders sought Board review, and in the meantime he obtained the opinion of another VA doctor, Dr. Duane Nii, who said that the "etiology of the patient's" eye condition "is . . . difficult to ascertain." He thought that "it is possible that" the condition "could be related to" a bazooka explosion, though the "possibility of" an infection "as the etiology . . . could also be entertained." *Id.*, at 30a. The Board concluded that Sanders had failed to show that the eye injury was service connected. The Board said that it had relied most heavily upon Anderson's report because, unlike other reports, it took account of Sanders' military medical records documenting his eyesight at the time of his enlistment and discharge. And the Board consequently affirmed the regional office's denial of Sanders' claim.

Sanders then appealed to the Veterans Court. There he argued, among other things, that the VA had made a notice error. Sanders conceded that the VA had sent him a letter telling him (1) what further information was necessary to substantiate his claim. But, he said, the VA letter did not tell him (2) which *portions* of the information the Secretary would provide or (3) which *portions* he would have to provide. That is to say, he complained about notice errors Type Two and Type Three.

The Veterans Court held that these notice errors were harmless. It said that Sanders had not explained how he would have acted differently, say, by identifying what different evidence he would have produced or asked the Secretary to obtain for him, had he received proper notice. Finding no other error, the Veterans Court affirmed the Board's decision.

### D

The Court of Appeals for the Federal Circuit reviewed the Veterans Court's decision and held that the Veterans Court was wrong to find the notice error harmless. The Federal Circuit wrote that when the VA provides a claimant with a notice letter that is deficient in *any* respect (to the point where a "reasonable person" would not have read it as providing the necessary information), the Veterans Court "should . . . presum[e]" that the notice error is "prejudicial, requiring reversal unless the VA can show that the error did not affect the essential fairness of the adjudication." *Sanders* v. *Nicholson*, 487 F. 3d 881, 889 (2007). To make this latter showing, the court added, the VA must "demonstrate" (1) that the "defect was cured by actual knowledge on the" claimant's "part," or (2) "that a benefit could not have been awarded as a matter of law." *Ibid.* Because the VA had not made such a showing, the Federal Circuit reversed the Veterans Court's decision.

### E

In the second case before us, the claimant, Patricia Simmons, served on active military duty from December 1978 to April 1980. While on duty she worked in a noisy environment close to aircraft; after three months she began to lose hearing in her left ear; and by the time she was discharged, her left-ear hearing had become worse. Soon after her discharge, Simmons applied for disability benefits. The VA regional office found her hearing loss was service connected; but it also found the loss insufficiently severe to warrant compensation. In November 1980, it denied her claim.

In 1998, Simmons asked the VA to reopen her claim. She provided medical examination records showing further loss of hearing in her left ear along with (what she considered related) loss of hearing in her right ear. The VA arranged for hearing examinations by VA doctors in

1999, 2001, and 2002. The doctors measured her left-ear hearing loss, ranking it as moderate to severe; they also measured her right-ear hearing loss, ranking it as mild to moderate. After comparing the results of the examinations with a VA hearing-loss compensation schedule, the regional office concluded that Simmons' left-ear hearing loss, while service connected, was not severe enough to warrant compensation. At the same time, the regional office concluded that her right-ear hearing loss was neither service connected nor sufficiently severe. Simmons appealed the decision to the Board, which affirmed the regional office's determination.

In 2003, Simmons appealed to the Veterans Court. Among other things, she said that she had not received a notice about (and she consequently failed to attend) a further right-ear medical examination that the VA later told her it had arranged. She added that, in respect to her claim for benefits for loss of hearing in her left ear, the VA had made a Type One notice error (*i.e.*, it had failed to tell her what further information was needed to substantiate her claim). Simmons conceded that she had received a letter from the VA. But the letter told her only what, in general, a person had to do to show that a hearing injury was service connected. It did not tell her anything about her specific problem, namely, what further information she must provide to show a worsening of hearing in her left ear, to the point where she could receive benefits.

The Veterans Court agreed with Simmons, and it found both errors prejudicial. In respect to Simmons' left-ear hearing loss (the matter at issue here), it pointed out that it had earlier said (in *Mayfield*, 19 Vet. App., at 120–124) that a Type One notice error has the "natural effect of producing prejudice." The court added that its "revie[w] [of] the record in its entirety" convinced it that Simmons did not have "actual knowledge of what evidence was necessary to substantiate her claim" and, had the VA told

Simmons more specifically about what additional medical information it needed, Simmons might have "obtained" a further "private" medical "examination substantiating her claim." App. G to Pet. for Cert. 81a. The Veterans Court consequently remanded the case to the Board.

The Government appealed the Veterans Court's determination to the Court of Appeals for the Federal Circuit. And that court affirmed the Veterans Court's decision on the basis of its decision in *Sanders. Simmons* v. *Nicholson,* 487 F. 3d 892 (2007).

### F

We granted certiorari in both Sanders' and Simmons' cases in order to determine the lawfulness of the Federal Circuit's "harmless-error" holdings.

### II

The Federal Circuit's holdings flow directly from its use of the "harmless-error" framework that we have described. *Supra*, at 6. Thus we must decide whether that framework is consistent with a particular statutory requirement, namely, the requirement that the Veterans Court "take due account of the rule of prejudicial error," 38 U. S. C. §7261(b)(2). See *supra,* at 3. We conclude that the framework is not consistent with the statutory demand.

### A

We believe that the statute, in stating that the Veterans Court must "take due account of the rule of prejudicial error," requires the Veterans Court to apply the same kind of "harmless-error" rule that courts ordinarily apply in civil cases. The statutory words "take due account" and "prejudicial error" make clear that is so. Congress used the same words in the Administrative Procedure Act (APA). 5 U. S. C. §706 ("[A] court shall review the whole record . . . and due account shall be taken of the rule of

prejudicial error"). The Attorney General's Manual on the Administrative Procedure Act explained that the APA's reference to "prejudicial error" is intended to "su[m] up in succinct fashion the 'harmless error' rule applied by the courts *in the review of lower court decisions as well as of administrative bodies.*" Dept. of Justice, Attorney General's Manual on the Administrative Procedure Act 110 (1947) (emphasis added). And we have previously described §706 as an "'administrative law . . . harmless error rule.'" *National Assn. of Home Builders* v. *Defenders of Wildlife*, 551 U. S. 644, \_\_\_ (2007) (slip op., at 12) (quoting *PDK Labs. Inc.* v. *United States Drug Enforcement Admin.*, 362 F. 3d 786, 799 (CADC 2004)). Legislative history confirms that Congress intended the Veterans Court "prejudicial error" statute to "incorporate a reference" to the APA's approach. S. Rep. No. 100–418, p. 61 (1988). We have no indication of any relevant distinction between the manner in which reviewing courts treat civil and administrative cases. Consequently, we assess the lawfulness of the Federal Circuit's approach in light of our general case law governing application of the harmless-error standard.

B

Three related features of the Federal Circuit's framework, taken together, convince us that it mandates an approach to harmless error that differs significantly from the approach courts normally take in ordinary civil cases. First, the framework is complex, rigid, and mandatory. In every case involving a notice error (of no matter which kind) the Veterans Court *must* find the error harmful unless the VA "demonstrate[s]" (1) that the claimant's "actual knowledge" cured the defect or (2) that the claimant could not have received a benefit as a matter of law. Suppose the notice error, as in Sanders' case, consisted of a failure to describe what additional information, if any,

the VA would provide.  It might be obvious from the record
in the particular case that the error made no difference.
But under the Federal Circuit's rule, the Veterans Court
would have to remand the case for new proceedings
regardless.

We have previously warned against courts' determining
whether an error is harmless through the use of manda-
tory presumptions and rigid rules rather than case-specific
application of judgment, based upon examination of the
record.  See *Kotteakos* v. *United States*, 328 U. S. 750, 760
(1946).  The federal "harmless-error" statute, now codified
at 28 U. S. C. §2111, tells courts to review cases for errors
of law "without regard to errors" that do not affect the
parties' "substantial rights."    That language seeks to
prevent appellate courts from becoming "'impregnable
citadels of technicality,'" *Kotteakos*, 328 U. S., at 759.  And
we have read it as expressing a congressional preference
for determining "harmless error" without the use of pre-
sumptions insofar as those presumptions may lead courts
to find an error harmful, when, in fact, in the particular
case before the court, it is not.  See *id.*, at 760; *O'Neal* v.
*McAninch*, 513 U. S. 432, 436–437 (1995); see also R.
Traynor, The Riddle of Harmless Error 26 (1970) (herein-
after Traynor) (reviewing court normally should "deter-
mine whether the error affected the judgment . . . without
benefit of such aids as presumptions . . . that expedite fact-
finding at trial").

The Federal Circuit's presumptions exhibit the very
characteristics that Congress sought to discourage.  In the
cases before us, they would prevent the reviewing court
from directly asking the harmless-error question.  They
would prevent that court from resting its conclusion on the
facts and circumstances of the particular case.  And they
would require the reviewing court to find the notice error
prejudicial even if that court, having read the entire re-
cord, conscientiously concludes the contrary.

Second, the Federal Circuit's framework imposes an unreasonable evidentiary burden upon the VA. How is the Secretary to demonstrate, in Sanders' case for example, that Sanders *knew* that he, not the VA, would have to produce more convincing evidence that the bazooka accident caused his eye injury? How could the Secretary demonstrate that there is *no* evidence anywhere that would entitle Sanders to benefits? To show a claimant's state of mind about such a matter will often prove difficult, perhaps impossible. And even if the VA (as in Sanders' case) searches the military records and comes up emptyhanded, it may still prove difficult, or impossible, to prove the nonexistence of evidence lying somewhere about that might significantly help the claimant.

We have previously pointed out that setting an evidentiary "barrier so high that it could never be surmounted would justify the very criticism that spawned the harmless-error doctrine," namely, reversing for error "'regardless of its effect on the judgment.'" *Neder* v. *United States*, 527 U. S. 1, 18 (1999) (quoting Traynor 50). The Federal Circuit's evidentiary rules increase the likelihood of reversal in cases where, in fact, the error is harmless. And, as we pointed out in *Neder,* that likelihood encourages abuse of the judicial process and diminishes the public's confidence in the fair and effective operation of the judicial system. 527 U. S., at 18.

Third, the Federal Circuit's framework requires the VA, not the claimant, to explain why the error is harmless. This Court has said that the party that "seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted." *Palmer* v. *Hoffman*, 318 U. S. 109, 116 (1943); see also *Tipton* v. *Socony Mobil Oil Co.*, 375 U. S. 34, 36 (1963) *(per curiam); United States* v. *Borden Co.*, 347 U. S. 514, 516–517 (1954); cf. *McDonough Power Equipment, Inc.* v. *Greenwood*, 464 U. S. 548, 553 (1984); *Market Street R. Co.* v.

*Railroad Comm'n of Cal.*, 324 U. S. 548, 562 (1945) (finding error harmless "in the absence of any showing of . . . prejudice").

Lower court cases make clear that courts have correlated review of ordinary administrative proceedings to appellate review of civil cases in this respect. Consequently, the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. See, *e.g.*, *American Airlines, Inc.* v. *Department of Transp.*, 202 F. 3d 788, 797 (CA5 2000) (declining to remand where appellant failed to show that error in administrative proceeding was harmful); *Air Canada* v. *Department of Transp.*, 148 F. 3d 1142, 1156–1157 (CADC 1998) (same); *Nelson* v. *Apfel*, 131 F. 3d 1228, 1236 (CA7 1997) (same); *Bar MK Ranches* v. *Yuetter*, 994 F. 2d 735, 740 (CA10 1993) (same); *Camden* v. *Department of Labor*, 831 F. 2d 449, 451 (CA3 1987) (same); *Panhandle Co-op Assn.* v. *EPA*, 771 F. 2d 1149, 1153 (CA8 1985) (same); *Frankfort* v. *FERC*, 678 F. 2d 699, 708 (CA7 1982) (same); *NLRB* v. *Seine & Line Fishermen*, 374 F. 2d 974, 981 (CA9 1967) (same).

To say that the claimant has the "burden" of showing that an error was harmful is not to impose a complex system of "burden shifting" rules or a particularly onerous requirement. In ordinary civil appeals, for example, the appellant will point to rulings by the trial judge that the appellant claims are erroneous, say, a ruling excluding favorable evidence. Often the circumstances of the case will make clear to the appellate judge that the ruling, if erroneous, was harmful and nothing further need be said. But, if not, then the party seeking reversal normally must explain why the erroneous ruling caused harm. If, for example, the party seeking an affirmance makes a strong argument that the evidence on the point was overwhelming regardless, it normally makes sense to ask the party seeking reversal to provide an explanation, say, by mar-

shaling the facts and evidence showing the contrary. The party seeking to reverse the result of a civil proceeding will likely be in a position at least as good as, and often better than, the opposing party to explain how he has been hurt by an error. Cf. *United States* v. *Fior D'Italia, Inc.*, 536 U. S. 238, 256, n. 4 (2002) (SOUTER, J., dissenting).

Respondents urge the creation of a special rule for this context, placing upon the agency the burden of proving that a notice error did *not* cause harm. But we have placed such a burden on the appellee only when the matter underlying review was criminal. See, *e.g.*, *Kotteakos*, 328 U. S., at 760. In criminal cases the Government seeks to deprive an individual of his liberty, thereby providing a good reason to require the Government to explain why an error should not upset the trial court's determination. And the fact that the Government must prove its case beyond a reasonable doubt justifies a rule that makes it more difficult for the reviewing court to find that an error did not affect the outcome of a case. See *United States* v. *Olano*, 507 U. S. 725, 741 (1993) (stating that the Government bears the "burden of showing the absence of prejudice"). But in the ordinary civil case that is not so. See *Palmer*, *supra*, at 116.

## C

Our discussion above is subject to two important qualifications. First, we need not, and we do not, decide the lawfulness of the use by the Veterans Court of what it called the "natural effects" of certain kinds of notice errors. We have previously made clear that courts may sometimes make empirically based generalizations about what kinds of errors are likely, as a factual matter, to prove harmful. See *Kotteakos*, *supra*, at 760–761 (reviewing courts may learn over time that the "'natural effect'" of certain errors is "'to prejudice a litigant's substantial rights'" (quoting H. R. Rep. No. 913, 65th Cong., 3d Sess.,

p. 1 (1919))).   And by drawing upon "experience" that
reveals some such "'natural effect,'" a court might prop-
erly influence, though not control, future determinations.
See *Kotteakos*, *supra*, at 760–761.   We consider here,
however, only the Federal Circuit's harmless-error frame-
work.   That framework, as we have said, is mandatory.
And its presumptions are not based upon an effort to
determine "natural effects."

Indeed, the Federal Circuit is the wrong court to make
such determinations.   Statutes limit the Federal Circuit's
review to certain kinds of Veterans Court errors, namely,
those that concern "the validity of . . . any statute or regu-
lation . . . or any interpretation thereof."   38 U. S. C.
§7292.   But the factors that inform a reviewing court's
"harmless-error" determination are various, potentially
involving, among other case-specific factors, an estimation
of the likelihood that the result would have been different,
an awareness of what body (jury, lower court, administra-
tive agency) has the authority to reach that result, a con-
sideration of the error's likely effects on the perceived
fairness, integrity, or public reputation of judicial proceed-
ings, and a hesitancy to generalize too broadly about
particular kinds of errors when the specific factual cir-
cumstances in which the error arises may well make all
the difference.   See *Neder*, 527 U. S., at 18–19; *Kotteakos*,
*supra*, at 761–763; Traynor 33–37.

It is the Veterans Court, not the Federal Circuit, that
sees sufficient case-specific raw material in veterans' cases
to enable it to make empirically based, nonbinding gener-
alizations about "natural effects."   And the Veterans
Court, which has exclusive jurisdiction over these cases, is
likely better able than is the Federal Circuit to exercise an
informed judgment as to how often veterans are harmed
by which kinds of notice errors.   Cf. *United States* v. *Hag-
gar Apparel Co.*, 526 U. S. 380, 394 (1999) (Article I court's
special "expertise . . . guides it in making complex deter-

minations in a specialized area of the law").

Second, we recognize that Congress has expressed special solicitude for the veterans' cause. See *post*, at 2 (SOUTER, J., dissenting). A veteran, after all, has performed an especially important service for the Nation, often at the risk of his or her own life. And Congress has made clear that the VA is not an ordinary agency. Rather, the VA has a statutory duty to help the veteran develop his or her benefits claim. See Veterans Claims Assistance Act of 2000, 38 U. S. C. §5103A. Moreover, the adjudicatory process is not truly adversarial, and the veteran is often unrepresented during the claims proceedings. See *Walters* v. *National Assn. of Radiation Survivors*, 473 U. S. 305, 311 (1985). These facts might lead a reviewing court to consider harmful in a veteran's case error that it might consider harmless in other circumstances. But that is not the question before us. And we need not here decide whether, or to what extent, that may be so.

## III

We have considered the two cases before us in light of the principles discussed. In Sanders' case, the Veterans Court found the notice error harmless. And after reviewing the record, we conclude that finding is lawful. The VA told Sanders what further evidence would be needed to substantiate his claim. It failed to specify what portion of any additional evidence the Secretary would provide (we imagine none) and what portion Sanders would have to provide (we imagine all).

How could the VA's failure to specify this (or any other) division of labor have mattered? Sanders has pursued his claim for over six decades; he has had numerous medical examinations; and he should be aware of the respect in which his benefits claim is deficient (namely, his inability to show that his disability is connected to his World War II service). See *supra*, at 5. Sanders has not told the Veter-

ans Court, the Federal Circuit, or this Court, what specific additional evidence proper notice would have led him to obtain or seek. He has not explained to the Veterans Court, to the Federal Circuit, or to us, how the notice error to which he points could have made any difference. The Veterans Court did not consider the harmlessness issue a borderline question. Nor do we. We consequently reverse the Federal Circuit's judgment and remand the case so that the court can reinstate the judgment of the Veterans Court.

Simmons' case is more difficult. The Veterans Court found that the VA had committed a Type One error, *i.e.*, a failure to tell Simmons what information or evidence she must provide to substantiate her claim. The VA sent Simmons a letter that provided her only with general information about how to prove a claim while telling her nothing at all about how to proceed further in her own case, a case in which the question was whether a concededly service-connected left-ear hearing problem had deteriorated to the point where it was compensable. And the VA did so in the context of having arranged for a further right-ear medical examination, which (because of lack of notice) Simmons failed to attend. The Veterans Court took the "natural effect" of a Type One error into account while also reviewing the record as a whole.

Some features of the record suggest the error was harmless, for example, the fact that Simmons has long sought benefits and has a long history of medical examinations. But other features—*e.g.*, the fact that her left-ear hearing loss was concededly service connected and has continuously deteriorated over time, and the fact that the VA had scheduled a further examination of her right ear that (had notice been given) might have revealed further left-ear hearing loss—suggest the opposite. Given the uncertainties, we believe it is appropriate to remand this case so that the Veterans Court can decide whether re-

consideration is necessary.

\*    \*    \*

We conclude that the Federal Circuit's harmless-error framework is inconsistent with the statutory requirement that the Veterans Court take "due account of the rule of prejudicial error." 38 U. S. C. §7261(b)(2). We reverse the Federal Circuit's judgment in Sanders' case, and we vacate its judgment in Simmons' case. We remand both cases for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 07–1209

ERIC K. SHINSEKI, SECRETARY OF VETERANS
AFFAIRS, PETITIONER *v.* WOODROW F. SANDERS

ERIC K. SHINSEKI, SECRETARY OF VETERANS
AFFAIRS, PETITIONER *v.* PATRICIA D. SIMMONS

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

[April 21, 2009]

JUSTICE SOUTER, with whom JUSTICE STEVENS and
JUSTICE GINSBURG join, dissenting.

Federal law requires the Court of Appeals for Veterans
Claims to "take due account of the rule of prejudicial
error." 38 U. S. C. §7261(b)(2). Under this provision,
when the Department of Veterans Affairs (VA) fails to
notify a veteran of the information needed to support his
benefit claim, as required by 38 U. S. C. §5103(a), must
the veteran prove the error harmful, or must the VA prove
its error harmless? The Federal Circuit held that the VA
should bear the burden. *Sanders* v. *Nicholson*, 487 F. 3d
881 (2007). The Court reverses because the Federal Cir-
cuit's approach is "complex, rigid, and mandatory," *ante*,
at 9, "imposes an unreasonable evidentiary burden upon
the VA," *ante*, at 10–11, and contradicts the rule in other
civil and administrative cases by "requir[ing] the VA, not
the claimant, to explain why the error is harmless," *ante*,
at 11. I respectfully disagree.

Taking the last point first, the Court assumes that there
is a standard allocation of the burden of proving harm-
lessness that Congress meant to adopt in directing the
Veterans Court to "take due account of the rule of prejudi-

cial error." 38 U. S. C. §7261(b)(2). But as both the majority and the Government concede, "[t]here are no hard-and-fast standards governing the allocation of the burden of proof in every situation," *Keyes* v. *School Dist. No. 1, Denver*, 413 U. S. 189, 209 (1973), and courts impose the burden of dealing with harmlessness differently in different circumstances. As the Court says, the burden is on the Government in criminal cases, *ante*, at 13, and even in civil and administrative appeals courts sometimes require the party getting the benefit of the error to show its harmlessness, depending on the statutory setting or specific sort of mistake made, see, *e.g.*, *McLouth Steel Prods. Corp.* v. *Thomas*, 838 F. 2d 1317, 1324 (CADC 1988) (declaring that imposing the burden of proving harm "on the challenger is normally inappropriate where the agency has completely failed to comply with" notice and comment procedures).

Thus, the question is whether placing the burden of persuasion on the veteran is in order under the statutory scheme governing the VA. I believe it is not. The VA differs from virtually every other agency in being itself obliged to help the claimant develop his claim, see, *e.g.*, 38 U. S. C. §5103A, and a number of other provisions and practices of the VA's administrative and judicial review process reflect a congressional policy to favor the veteran, see, *e.g.*, §5107(b) ("[T]he Secretary shall give the benefit of the doubt to the claimant" whenever "there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter"); §7252(a) (allowing the veteran, but not the Secretary, to appeal an adverse decision to the Veterans Court). Given Congress's understandable decision to place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions, I would not remove a comparable benefit in the Veteran's Court based on the ambiguous directive of §7261(b)(2).

And even if there were a question in my mind, I would come out the same way under our longstanding "rule that interpretive doubt is to be resolved in the veteran's favor." *Brown* v. *Gardner*, 513 U. S. 115, 118 (1994).

The majority's other arguments are open to judgment, but I do not see that placing the burden of showing harm on the VA goes so far as to create a "complex, rigid, and mandatory" scheme, *ante*, at 9, or to impose "an unreasonable evidentiary burden upon the VA," *ante*, at 10–11. Under the Federal Circuit's rule, the VA simply "must persuade the reviewing court that the purpose of the notice was not frustrated, e.g., by demonstrating: (1) that any defect was cured by actual knowledge on the part of the claimant, (2) that a reasonable person could be expected to understand from the notice what was needed, or (3) that a benefit could not have been awarded as a matter of law." *Sanders, supra*, at 889. This gives the VA several ways to show that an error was harmless, and the VA has been able to shoulder the burden in a number of cases. See, *e.g., Holmes* v. *Peake*, No. 06–0852, 2008 WL 974728, *2 (Vet. App., Apr. 3, 2008) (Table) (finding notice error harmless because the claimant had "actual knowledge of what was required to substantiate" his claim); *Clark* v. *Peake*, No. 05–2422, 2008 WL 852588, *4 (Vet. App., Mar. 24, 2008) (Table) (same).

The Federal Circuit's rule thus strikes me as workable and in keeping with the statutory scheme governing veterans' benefits. It has the added virtue of giving the VA a strong incentive to comply with its notice obligations, obligations "that g[o] to the very essence of the nonadversarial, pro-claimant nature of the VA adjudication system . . . by affording a claimant a meaningful opportunity to participate effectively in the processing of his or her claim." *Mayfield* v. *Nicholson*, 19 Vet. App. 103, 120–121 (2005).

I would affirm the Federal Circuit and respectfully dissent.