FILED
United States Court of Appeals
Tenth Circuit

June 16, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

EDWARD JACKSON JIMENEZ,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

Defendant-Appellee.

No. 09-6225
(D.C. No. 5:08-CV-01199-M)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **TYMKOVICH**, and **GORSUCH**, Circuit
Judges.

---

Edward Jackson Jimenez appeals the decision of the district court affirming

the denial of his application for social security disability insurance benefits.

Because the decision of the Administrative Law Judge (ALJ) was supported by

substantial evidence and the law was properly applied, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

Mr. Jimenez alleges that he has been disabled since April 2005, primarily due to compression fractures of the vertebrae sustained in an on-the-job fall in May 2000. He has also experienced a fractured metacarpal bone, nasal surgery, and a nail-gun injury to his right foot. In his written submissions and testimony, Mr. Jimenez described stiffness and pain in upper and lower back, left shoulder blade, legs, and neck, along with right knee problems, headaches, dizziness, breathing difficulties, memory loss, difficulty seeing close up, hypertension, sleep disorders, and fatigue.

The relevant medical record begins with entries about the injuries Mr. Jimenez sustained in the May 2000 fall. He was given treatment and therapy for a mid-spine compression fracture, then released in October 2000 to return to work without restrictions or further medical care. After Mr. Jimenez filed his application for benefits in 2005, the agency retained a consultative physician, Juan A. Maldonado, M.D., to conduct a disability determination. Dr. Maldonado examined Mr. Jimenez and observed that he could walk with no difficulty despite pain in the lumbar and left shoulder regions and a decrease in the lumbar and cervical ranges of motion. Dr. Maldonado found no weakness, atrophy, swelling, increased heat, limited range of motion, or redness in any joints. Mr. Jimenez had good hand grip strength and had normal fine manipulation, gait, and deep tendon reflexes. A month later, Luther Woodcock, M.D., reviewed Mr. Jimenez's

medical records, including Dr. Maldonado's report. Based on his analysis of the medical evidence, Dr. Woodcock concluded that Mr. Jimenez had the ability to perform a full range of medium work activity.

Similarly, the medical records were reviewed by Thomas M. Lynn, M.D., who appeared as a medical expert at the hearing before the ALJ in August 2007. At the hearing, Dr. Lynn testified that Mr. Jimenez had the residual functional capacity to sit, stand, or walk, as long as he could change position approximately every hour; occasionally lift up to 50 pounds and push/pull under 20 pounds; frequently lift 20 pounds, and occasionally bend, stoop, squat, crouch, and crawl. Dr. Lynn further opined that he had no environmental, manipulative, or communicative limitations.

A vocational expert (VE) also testified at the hearing, responding to the ALJ's hypothetical questions relating to a person with Mr. Jimenez's vocational profile who could sit, stand, or walk for an unlimited time, but needed to change position at least every hour; occasionally lift 50 pounds; frequently lift 20 pounds; and occasionally bend, stoop, squat, crouch, and crawl. The person could also push/pull 20 pounds occasionally and had no limits in manipulation. The VE stated that the hypothetical person could not perform Mr. Jimenez's past relevant work, but could perform medium, unskilled work as a food deliverer; light, unskilled work as a ticket seller; and sedentary, unskilled work as a call-out

operator. She estimated that those jobs totaled 10,000 in the regional economy and over 800,000 in the national economy.

II.

The ALJ's decision followed the five-step sequential evaluation process. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step framework for determining disability). The ALJ found that Mr. Jimenez met the step-one threshold because he had not performed substantial gainful activity since April 15, 2005, his alleged disability onset date. At step two, the ALJ found that Mr. Jimenez's discogenic and degenerative disorders of the back were severe impairments, but his high blood pressure and fatigue were not. The ALJ's step-three conclusion was that Mr. Jimenez's impairments, or combination of impairments, did not meet or equal any Listing in 20 C.F.R. Part 404, Subpart P, App'x 1. At step four, the ALJ determined that Mr. Jimenez could not perform his past relevant work, which required heavy exertion.

Because Mr. Jimenez could not return to his past work, the ALJ proceeded to step five. The ALJ "was not persuaded [Mr. Jimenez's] impairments preclude him from engaging in all substantial gainful activity." Admin. R. at 22. The ALJ found that Mr. Jimenez had the residual functional capacity to perform a range of medium work. In reaching this finding, the ALJ acknowledged that Mr. Jimenez's "medically determinable impairment could reasonably be expected to produce the alleged symptoms," but found that his "statements concerning the

-4-

intensity, persistence and limiting effects of those symptoms are not entirely credible." *Id.* at 20. The ALJ noted that Mr. Jimenez had "basically not sought any private medical care for his alleged back pain since his alleged onset date." *Id.* at 22.

In a finding consistent with the medical record and the VE's testimony, the ALJ determined that Mr. Jimenez could perform other jobs existing in significant numbers in the national economy. Thus, the ALJ concluded that Mr. Jimenez was not disabled and not entitled to disability insurance benefits.

III.

This court "independently determine[s] whether the ALJ's decision is free from legal error and supported by substantial evidence." *Wall*, 561 F.3d at 1052. (quotation omitted). "We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (quotation omitted).

Read literally, Mr. Jimenez's primary argument is that the ALJ's step-two finding of a severe back impairment was not based on sufficient objective evidence. At step-two, the issue is whether a claimant has a severe impairment that "significantly limits" his "ability to perform basic work activities." *Wall*, 561 F.3d at 1052. The finding of a severe impairment means that a claimant may

-5-

"not be denied benefits conclusively at step two" and that the ALJ must "proceed[] to the next step of the evaluation sequence." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). Thus, the ALJ's step-two finding worked to Mr. Jimenez's advantage, not to his detriment.

Mr. Jimenez, however, is proceeding pro se on appeal so we liberally construe his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). So construed, his argument may be that the ALJ was required to procure additional medical evidence before making a residual-functional-capacity determination at step four of the sequential analysis. "In a social security disability case, the claimant bears the burden to prove [his] disability," though the nonadversarial nature of these matters imposes a duty on the ALJ "to ensure that an adequate record is developed . . . consistent with the issues raised." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (quotation omitted).

Mr. Jimenez's condition is well-documented in his medical records. None of his medical providers suggested that he was disabled from working after his recovery from the fall that occurred in 2000. And neither consultative physician Maldonado nor a reviewing physician expressed uncertainty or the need for additional investigation. Because existing medical records provided substantial evidence in support of the ALJ's RFC assessment, no further development of the record was necessary.

In his secondary arguments, Mr. Jimenez attacks the usefulness of the medical evidence on three grounds:  first, Dr. Maldonado's report was not included in the certified administrative record; second, that Dr. Maldonado and Dr. Lynn were  internists, not orthopedists; and third, that Mr. Jimenez is of the opinion that Dr. Maldonado and Dr. Lynn did not conduct proper examinations or reach valid conclusions.  None of these points has legal significance.

It is true that Dr. Maldonado's report should have been included in the administrative record filed in the district court.  *See* 42 U.S.C. 405(g) ("[T]he Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.").  Its absence, however, did not prejudice Mr. Jimenez in any way.  The reviewing physicians referred to the report, the ALJ relied on the report's conclusion, and Mr. Jimenez himself provided the district court with a copy of the report.  At worst, the omission of the report was harmless error.  *See Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

As to Mr. Jimenez's attacks on the credentials and opinions of the consultative and reviewing physicians, it is sufficient to note that both individuals are "qualified medical sources" under the applicable regulations, 20 C.F.R. § 404.1519g(b), and that they substantiated their conclusions with explicit medical findings.

Finally, Mr. Jimenez alleges errors in proceedings before the Magistrate Judge. He claims that the Magistrate Judge reworded the ALJ's severe-impairment finding and also denied him the opportunity to file a reply brief. Mr. Jimenez, however, does not identify any prejudice flowing from either action. The Magistrate Judge's paraphrase of the finding has no apparent consequence. And Mr. Jimenez does not explain what arguments he would have included in a reply brief or how they would have differed from his filed objections to the Magistrate Judge's Report and Recommendations.[1] He also fails to recognize that the ALJ's decision, not the district court's determination, is the decision reviewed by this court. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).

Under the standards applicable to Mr. Jimenez's appeal, we see no reason to disturb the ALJ's denial of benefits. The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Chief Circuit Judge

---

[1] We also note that this court granted Mr. Jimenez's second (and untimely) motion for extension of time to file a reply brief. Mr. Jimenez, however, has not filed a reply brief within the allotted time.