NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALISUD - GESAC HANDLING - SERVISAIR 2 SCARL, AKA ALGESE 2 SCARL, AKA ALGESE,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, LOUIS BERGER AIRCRAFT SERVICES, INC.,**
*Defendants-Appellees*

---

2023-1087

---

Appeal from the United States Court of Federal Claims in No. 1:22-cv-00061-EJD, Senior Judge Edward J. Damich.

---

Decided: July 18, 2024

---

KRISTEN ITTIG, Arnold & Porter Kaye Scholer LLP, Washington, DC, argued for plaintiff-appellant. Also represented by THOMAS PETTIT, CHRISTOPHER YUKINS.

STEPHANIE FLEMING, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by BRIAN M. BOYNTON, PATRICIA M.

McCarthy, Douglas K. Mickle.

Michael Montalbano, Blank Rome LLP, Philadelphia, PA, argued for defendant-appellee Louis Berger Aircraft Services, Inc. Also represented by David Lee Bodner, Stephanie Harden, David Michael Nadler, Washington, DC.

_____

Before Chen, Linn, and Stark, *Circuit Judges*.

Chen, *Circuit Judge*.

The Department of the Navy (Navy) issued requests for proposals for air-terminal and ground-handling services in Naples, Italy and Rota, Spain. After receiving proposals, the Navy awarded both contracts to Louis Berger Aircraft Services, Inc. (Louis Berger). Alisud - Gesac Handling - Servisair 2 Scarl (Algese) filed post-award bid protests challenging the Navy's decisions. All parties moved for judgment on the administrative record, and the Court of Federal Claims (Claims Court) denied Algese's motion and granted the motions filed by the United States and Louis Berger (collectively, Appellees). *Alisud - Gesac Handling - Servisair 2 Scarl v. United States*, 161 Fed. Cl. 655, 662 (2022) (*Decision*). Algese appeals, challenging only the Claims Court's decision for the Naples contract. For the following reasons, we *affirm*.

BACKGROUND

A.

The Navy issued requests for proposals N68171-20R-0014 and N68171-21R-6001 for air-terminal and ground-handling services at two Navy airfields located in Naples, Italy and Rota, Spain, respectively. Louis Berger was the incumbent for the Rota contract, and Algese was the incumbent for the Naples contract. The Navy awarded both contracts to Louis Berger. Algese then filed bid protests for

both contract awards, but it challenges only the award of the Naples contract on appeal.

The Naples request for proposals sought a "best value" contract, meaning the Navy would award the contract "to the responsible Offeror whose offer, conforming to the solicitation, provides the best value to the Government." J.A. 100758. A best-value contract comes from the offer that "provides the greatest overall benefit(s) in response to the requirement[s]." *Id.* To make this determination, the Navy evaluated the offers based on three factors: (1) Technical Capability, (2) Past Performance, and (3) Price.

The first factor, Technical Capability, served a gate-keeping role. The Navy evaluated this factor based on three subfactors—Performance Work Statement (PWS) Capability Acknowledgment, Staffing, and Implementation. Each subfactor was then rated as Acceptable or Unacceptable for each offer. An Unacceptable rating for any subfactor meant that the offer was not eligible for the contract.

Relevant to this appeal, the Staffing subfactor required the offeror, among other things, to comply with PWS paragraph 4.2:

> To be rated "Acceptable", the Offeror's staffing approach must demonstrate adequate staffing and sufficient management to support the requirements identified in the PWS Paragraph 1. Description of Services, including all subparagraphs. The evaluation will focus on ALL of the following elements: 1) Offeror's plan which describes proposed manning levels and skills mix necessary to ensure all required personnel resources are provided to successfully accomplish all performance requirements on the start date of the performance period; 2) an organizational chart which identifies all on-site management and supervisory positions, the number of personnel assigned to each of the

> following functional areas: Air Terminal Opera-
> tions Center, Aircraft Services, Passenger and Bag-
> gage Services, Records, Reports, and Electronic
> Data Interchange, Communications Management
> and Information Systems; 3) identification of posi-
> tions that are full time or part-time, length of work
> shifts (i.e. 8 or 12 hours), and an example of a seven
> day shift schedule; 4) any cross-utilization of per-
> sonnel by position and skill set between functional
> areas; 5) *all other details which address minimum
> staffing requirements reference in accordance with
> PWS paragraph 4.2.*

J.A. 100759 (emphasis added). PWS paragraph 4.2, titled "Hours of Operation," provided that the Air Terminal Operations Center must be staffed 365 days a year from 6:00 a.m. to 10:00 p.m., that all other functions and services must be staffed from 7:30 a.m. to 4:30 p.m. on Monday through Friday and from 10:00 a.m. to 2:00 p.m. on Saturday, and that the Contractor "shall provide [certain personnel] with the means/information needed to contact the Station Manager or Alternate Station Manager(s) 24 hours a day." *Id.* at 100687.

As for the Past Performance factor, its "purpose . . . [wa]s to allow the Government to assess the offeror's ability to perform the effort de[scr]ibed in this [request for proposals], based on the Offeror's demonstrated recent and relevant past performance." *Id.* at 100759. To do so, the Navy evaluated each "Offeror's overall record of recency, relevancy, and quality of past performance." *Id.* This factor was then rated on a five-step scale from "No Confidence" to "Substantial Confidence." *See id.* at 100760.

Finally, the Price factor was evaluated based on the completeness and reasonableness of the proposal's pricing.

In response to the Naples request for proposals, four contractors submitted proposals, but only Louis Berger and

Algese submitted proposals that the Navy found acceptable. The decision therefore came down to Algese and Louis Berger. The Navy scored Algese's and Louis Berger's proposals identically under the Technical Capability and Past Performance factors, but Louis Berger's price was cheaper. The Navy therefore awarded the contract to Louis Berger.

## B.

Algese filed a post-award protest, challenging the Navy's decision to award the Naples contract to Louis Berger. Relying on adverse Spanish court judgments against Louis Berger, Algese argued that Louis Berger had a history of violating Spanish labor laws under the incumbent contract in Rota, Spain. *Decision*, 161 Fed. Cl. at 661. In Algese's view, these purported labor law violations ran afoul of Defense Federal Acquisition Regulation Supplement (DFARS) 252.222-7002, which provides in relevant part that "the Contractor shall comply with all local laws, regulations, and labor union agreements governing work hours." DFARS 252.222-7002(a)(1) (cleaned up). That regulation was incorporated in the incumbent Rota contract and the Naples contract. *Decision*, 161 Fed. Cl. at 673.

The Government then filed a motion for a voluntary remand so that the Navy could address these purported labor law issues. The Claims Court granted the motion, remanding the case to the Navy's contracting officer.

Relevant to this appeal, the purpose of the remand was to determine whether the purported labor law violations would alter the contracting officer's decision to award the Naples contract to Louis Berger. They did not. After considering the purported labor law violations, the contracting officer affirmed her original decision.

To assist with the remand, the contracting officer relied on a Spanish labor law expert: Mr. Tomas Lacave, an Assistant Counsel within the Navy's Office of General Counsel in Rota, Spain. Mr. Lacave provided a declaration

"explain[ing] the structure of Spain's labor legal system and the impact of [court] decisions on an employer's ability to carry out and continue its business operations." J.A. 107966 ¶ 4.  He also reviewed 16 labor disputes between employees or labor unions and Louis Berger.  Overall, he determined that "challenges to [Louis Berger's] employment practices have been determined lawful for 11 cases and unlawful for 5 cases." *Id.* at 107972 ¶ 11.

The contracting officer then (i) interpreted DFARS 252.222-7002 such that a contractor has not violated it simply by losing a foreign labor law case, (ii) alternatively found that even if losing a case was a violation, it would not necessarily impact the past performance score and responsibility determination, and (iii) reaffirmed her original decision:

> Furthermore, I do not interpret DFARS 252.222-7002 to mean that a contractor has breached the contract simply by losing a foreign labor law case associated with performance of a Government contract.  Given the breadth of requirements and mandatory clauses in a Government contract, in my experience, it is essential to always consider the context and significance when assessing a contractor's compliance with a given requirement.  Therefore, my interpretation of DFARS 252.222-7002 is that the context and significance of the labor cases must be considered before a determination could be made that the contractor has breached its obligations under the clause.  Further, even if DFARS 252.222-7002 is interpreted to mean that losing a single labor case constitutes a technical violation or breach, this does not mean the contractor's past performance evaluation or responsibility would necessarily be impacted as the significance and context would still need to be considered.

> After reconsidering all the above, I continue to have substantial confidence in [Louis Berger's] ability to perform the requirements of the Naples contract and affirm the original past performance rating and responsibility determination.

J.A. 31010.

Following the remand, all parties moved before the Claims Court for judgment on the administrative record. Algese raised two arguments relevant to this appeal. First, Algese contended that the labor unrest under the incumbent Rota contract should have caused the contracting officer to downgrade Louis Berger's past performance score or to make adverse responsibility findings against Louis Berger. *Decision*, 161 Fed. Cl. at 661. Second, Algese argued that the contracting officer should have found Louis Berger's staffing plan deficient because it did not staff a Station Manager or Alternate Station Manager 24 hours a day. *Id.* at 662, 676–77.

The Claims Court ruled in favor of the Appellees, granting their motions for judgment on the administrative record and denying Algese's. *Id.* at 662. It held "that the Navy's decision not to downgrade [Louis Berger] after reviewing the Spanish Court cases (on remand) was rational." *Id.* at 674. The Claims Court recognized that the Navy knew about the labor unrest and found that it did not impair Louis Berger's "exceptional" performance under the incumbent Rota contract. *Id.* It also noted that the contracting officer found that Louis Berger "indicated a staffing capacity and stated intent to employ part-time personnel for additional hours to cover requirements to meet minimum staffing requirements." *Id.* at 677 (quoting J.A. 101190). "Weighing the heavy deference afforded to agency technical assessments," the Claims Court held "that the Navy was rational to not reject [Louis Berger's] technical proposal for listing only two 8-hour Staffing [sic] Managers." *Id.*

Prior to the Claims Court's decision, Algese filed a motion to supplement the roughly 10,000-page administrative record with two documents totaling seven pages. The time between the filing of the motion and the Claim's Court decision was only ten days, and in that period the Claims Court twice entered orders concerning the motion. First, the Claims Court ordered the Appellees to respond to the motion and indicated that a reply brief was unnecessary. Then, after the response briefs were filed, Algese moved for leave to file a reply brief, and the Claims Court denied that motion.

In its decision, the Claims Court did not address the motion to supplement the administrative record. Algese then filed this appeal, arguing in part that the Claims Court erred by not ruling on that motion. While this appeal was pending, the Claims Court denied Algese's motion to supplement because the "affidavit came after the award . . . and also was not considered by the contracting officer." J.A. 74005–06.

Algese appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

Algese raises three arguments on appeal. First, Louis Berger's purported labor law violations should have downgraded its past performance rating and responsibility determination. Second, Louis Berger's staffing plan was deficient. Third, the Claims Court erred by not ruling on its motion to supplement prior to the filing of this appeal. We address each argument in turn and find none of them persuasive.

## I.

In reviewing a grant of judgment upon the administrative record, we review the Claims Court's determination without deference, reapplying the same standard of review applicable in the Claims Court. *Weeks Marine, Inc. v.*

*United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005)). We therefore review the agency's actions according to the standards set forth in the Administrative Procedure Act, 5 U.S.C. § 706. *See* 28 U.S.C. § 1491(b)(4). Under that standard, we ask whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2).

In applying this standard of review, we determine whether "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Weeks Marine*, 575 F.3d at 1358 (quoting *PGBA, LLC v. United States*, 389 F.3d 1219, 1225 (Fed. Cir. 2004)).

## II.

Algese first contends that the contracting officer misinterpreted DFARS 252.222-7002. According to Algese, Louis Berger violated that provision, if properly interpreted, because it lost certain Spanish labor law cases— meaning Louis Berger also breached the incumbent Rota contract. In Algese's view, the adverse labor law cases and breach of contract should have downgraded Louis Berger's past performance score and responsibility determination, making it more likely that Algese would have received the contract.

We need not address the correct interpretation of DFARS 252.222-7002 because the contracting officer made an alternative finding that it would award the contract to Louis Berger even under Algese's interpretation. Specifically, the contracting officer found that "even if DFARS 252.222-7002 is interpreted to mean that losing a single labor case constitutes a technical violation or breach, this does not mean the contractor's past performance evaluation or responsibility would necessarily be impacted as the significance and context would still need to be considered." J.A. 31010. The contracting officer then concluded that

"[a]fter reconsidering all the above"—including if DFARS 252.222-7002 was interpreted as Algese proposed—she "continue[d] to have substantial confidence in [Louis Berger's] ability to perform the requirements of the Naples contract and affirm[ed] the original past performance rating and responsibility determination." *Id.* Based on these findings, we conclude that the Navy's decision is supported by a rational basis.

## III.

Next, Algese contends that the contracting officer and Claims Court misinterpreted PWS paragraph 4.2, which provides that "[t]he Contractor shall provide [certain personnel] with the means/information needed to contact the Station Manager or Alternate Station Manager(s) 24 hours a day." J.A. 100687. It is undisputed that Louis Berger's staffing plan did not staff a Station Manager or Alternate Station Manager 24 hours a day. Algese therefore argues that Louis Berger did not comply with PWS paragraph 4.2.

We reject this argument because it is divorced from the language of the relevant provision. PWS paragraph 4.2 requires the contractor to provide "the means/information needed to contact the Station Manager or Alternate Station Manager(s) 24 hours a day." J.A. 100687. Being able to contact a manager 24 hours a day does not necessarily mean that a manager must be staffed 24 hours a day. The Navy found Louis Berger indicated a staffing capacity and intended to employ part-time personnel for additional hours to meet minimum staffing requirements. *Decision*, 161 Fed. Cl. at 677. The Navy then concluded that Louis Berger's staffing plan was Acceptable. Based on these findings, we conclude that the Navy's decision is supported by a rational basis.

## IV.

Last, Algese argues that the Claims Court lacked jurisdiction to rule on the motion to supplement because the

filing of this appeal stripped the Claims Court of jurisdiction over that motion. In the alternative, Algese argues that the Claims Court abused its discretion in denying the motion. We need not reach these issues because any error would be harmless.

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). "Although the test for harmful error can be complex," here, Algese "must show a 'likelihood that the result would have been different.'" *Valles v. Dep't of State*, 17 F.4th 149, 152 (Fed. Cir. 2021) (quoting *Shinseki*, 556 U.S. at 411).

Algese falls short of meeting its burden. "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "Thus, supplementation of the record should be limited to cases in which the omission of extra-record evidence precludes effective judicial review." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (internal quotation marks and citation omitted). Algese has not identified any persuasive reason why judicial review was precluded by not supplementing the already extensive record with the two additional documents it sought to add. It has therefore not shown a "likelihood that the result would have been different." *Shinseki*, 556 U.S. at 411.

## CONCLUSION

We have considered Algese's remaining arguments and find them unpersuasive. For the foregoing reasons, the Claims Court's decision is *affirmed*.

**AFFIRMED**