FILED

**NOT FOR PUBLICATION**

JUN 28 2010

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TONGASS CONSERVATION SOCIETY, et al., | No. 10-35232 |
| Plaintiffs - Appellants, | D.C. No. 3:10-cv-00006-TMB |
| v. | MEMORANDUM* |
| UNITED STATES FOREST SERVICE, US Department of Agriculture, et al., | |
| Defendants - Appellees, | |
| VIKING LUMBER COMPANY, INC., et al., | |
| Intervenor-Defendants - Appellees. | |

Appeal from the United States District Court
for the District of Alaska
Timothy M. Burgess, District Judge, Presiding

Argued and Submitted June 7, 2010
Seattle, Washington

Before: CANBY, CALLAHAN and IKUTA, Circuit Judges.

_____

        *        This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Tongass Conservation Society, Greenpeace, and Cascadia Wildlands (collectively, "TCS") claim that the district court abused its discretion in holding that TCS had a low likelihood of success on the merits of its National Environmental Policy Act (NEPA) and National Forest Management Act (NFMA) claims, and therefore erred in denying TCS's motion for a preliminary injunction to stop the Logjam Timber Sale Project ("Logjam"). Under our deferential standard of review, we affirm the district court. *See Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009).

NEPA Claims. The district court did not abuse its discretion in holding that TCS had a very low likelihood of succeeding on the merits of its claim that the Forest Service violated NEPA by failing to take a "hard look" at the impacts of the Logjam project on the aquatic environment, Alexander Archipelago wolves, and the Sitka black-tailed deer. *See, e.g.*, *Native Ecosystems Council v. Tidwell*, 599 F.3d 926, 937 (9th Cir. 2010). First, the record indicates that the Forest Service considered the impacts on the aquatic environment from open, stored, and decommissioned roads over the length of the project, and reasonably concluded that the impacts would be minor. The record likewise indicates that the Forest

2

Service considered these impacts in the context of the existing, degraded conditions of the affected watersheds.[1]

Second, the record establishes that the Forest Service took a hard look at the potential impacts of Logjam on wolves and discussed this issue extensively in the DEIS and FEIS. Although the DEIS erroneously stated that the Alaska Department of Fish and Game (ADF&G) did not have concerns about wolf mortality, the DEIS contained enough information to elicit extensive, detailed public comments on the wolf mortality analysis. Moreover, the Forest Service corrected its error in the FEIS. Because "the NEPA goals of public participation and informed decision-making occurred," *Westlands Water Dist. v. U.S. Dep't of the Interior*, 376 F.3d 853, 874 (9th Cir. 2004), TCS was unlikely to succeed on its claim that the Forest Service's consideration of the impacts on wolves fell short of NEPA's requirements.

Third, the district court's conclusion that the Forest Service took a hard look at Logjam's impacts to deer is supported by the record. The Forest Service adequately accounted for impacts to deer habitat on non-federal lands within the

---

[1] TCS's related claim that the Forest Service did not adequately analyze the impacts from the Logjam project in conjunction with the impacts from other reasonably foreseeable activities was not raised in the opening brief below and not developed in the reply brief below. Therefore, that claim was not preserved for appeal. *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir.1990).

3

project area by analyzing a worst-case scenario. The Forest Service's decision to focus on impacts to deer winter habitat, rather than summer habitat, was a scientific determination within the Forest Service's area of expertise that is entitled to deference. *See Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701, 707 (9th Cir. 2009). Further, the Forest Service adequately explained how it analyzed impacts on deer; the record discloses that the Forest Service considered both "high-value deer winter range" and acres of average-snow winter and deep-snow winter range. *See Adler v. Lewis*, 675 F.2d 1085, 1096 (9th Cir. 1982).

NFMA Claims. The district court did not abuse its discretion in holding that TCS had a low likelihood of success on its claims that the Forest Service violated NFMA by failing to comply with the requirements of the Tongass Land and Resource Management Plan (the "Forest Plan") regarding red culverts, wolf habitat management plans, and modeling deer habitat. First, the Forest Service's determination to fix only eleven of the existing twenty-five red culverts did not conflict with the Forest Plan. The Forest Service's interpretation of its own plan as not requiring it to cure pre-existing problems as a condition of implementing a new project was a reasonable interpretation to which we defer. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, 565 F.3d 545, 555 (9th Cir. 2009). Second, even if the Forest Service's interpretation

4

of the Forest Plan as requiring the implementation of a Wolf Habitat Management Plan (WHMP) only when the Forest Service itself is concerned about wolf mortality is unreasonable, we defer to Forest Service's reasonable determination that it did not have to prepare a WHMP in advance of implementing Logjam. *See id.* For this reason, the Forest Service's decision not to develop a WHMP did not violate the plan. Third, the Forest Service's determination that the Forest Plan allowed it to use "alternate analysis tools," including consideration of "[l]ocal knowledge of habitat conditions," for determining the impacts on deer was reasonable. *See id.* Moreover, the Forest Service did consider the output of the most recent deer habitat capability model as reported in the 2008 Forest Plan. Finally, the Forest Service's approval of a project that would result in less than eighteen deer per square mile was reasonable in light of the conflicting objectives of the Forest Plan. *See Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 900 (9th Cir. 2002).

In sum, the district court correctly determined that TCS had a "very low likelihood of success on the merits" of its NEPA and NFMA claims. Therefore, even assuming the district court was correct in concluding that the balance of the hardships and the public interest tipped in TCS's favor, the district court did not

5

abuse its discretion in denying TCS a preliminary injunction. *See Wildwest Inst. v. Bull*, 472 F.3d 587, 590 (9th Cir. 2006).

**AFFIRMED**.