**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

TONGASS CONSERVATION
SOCIETY; et al.,

            Plaintiffs - Appellants,

 v.

UNITED STATES FOREST SERVICE,
US Department of Agriculture; et al.,

            Defendants - Appellees,

VIKING LUMBER COMPANY, INC.; et
al.,

            Intervenor-Defendants -
Appellees.

No. 10-35904

D.C. No. 3:10-cv-00006-TMB

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Alaska
Timothy M. Burgess, District Judge, Presiding

Argued and Submitted July 29, 2011
Anchorage, Alaska

Before: B. FLETCHER, KLEINFELD, and CALLAHAN, Circuit Judges.

---

 [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Tongass Conservation Society ("TCS"), Greenpeace, Inc., and Cascadia Wildlands (referred to collectively as TCS) appeal from the district court's grant of summary judgment in favor of the United States Forest Service ("Forest Service"). TCS sought to enjoin the Logjam Project which provides for the logging of 3,422 acres of predominately old growth forest and the construction of 22 miles of temporary roads in the Tongass National Forest on Prince of Wales Island, Alaska. TCS previously sought and was denied preliminary injunctive relief by the district court and the Ninth Circuit. *See Tongass Conservation Soc'y v. U.S. Forest Serv.*, 385 Fed. App'x 708 (9th Cir. 2010). In granting summary judgment to the Forest Service, the district court relied in large part on the Ninth Circuit's memorandum disposition denying preliminary relief. TCS argues on appeal that the district court should not have deferred to the Ninth Circuit's disposition and that the Forest Service failed to give the requisite "hard look" to several aspects of the Logjam Project. We affirm. Regardless of the degree of deference owed to our prior decision, TCS has failed to show that the Final Environmental Impact Statement ("FEIS") was seriously flawed or that the Forest Service failed to take the requisite "hard look" at the environmental consequences of the Logjam Project.[1]

---

[1] The parties are familiar with the facts, and we repeat them here only as necessary to explain our decision.

We review de novo the district court's grant of summary judgment. *Lands Council v. McNair*, 629 F.3d 1070, 1074 (9th Cir. 2010). However, because judicial review of agency decisions under the National Environmental Policy Act ("NEPA") is governed by Section 706 of the Administrative Procedure Act, we uphold the agency's action "unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A)). Our review is "limited to the question of whether the agency took a 'hard look' at the proposed action as required by a strict reading of NEPA's procedural requirements." *Bering Strait Citizens for Responsible Res. Dev. v. U.S. Army Corps of Eng'rs*, 524 F.3d 938, 947 (9th Cir. 2008). We defer to any agency decision that is "fully informed and well-considered," but we will not overlook "a clear error of judgment." *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1211 (9th Cir. 1998) (internal quotation marks omitted).

**1**. In denying TCS preliminary relief, our prior memorandum disposition not only determined that TCS was unlikely to succeed on the merits, but also made a number of other determinations. *See Tongass Conservation Soc'y*, 385 Fed. App'x 708. The "law of the case doctrine ordinarily precludes a court from reexamining an issue previously decided by the same court or a higher court in the same case." *Southern Oregon Barter Fair v. Jackson County, Oregon*, 372 F.3d

1128, 1136 (9th Cir. 2004).  However, we have also noted a general rule that "decisions at the preliminary injunction phase do not constitute law of the case." *Ranchers Cattlemen Action Legal Fund v. USDA*, 499 F.3d 1108, 1114 (9th Cir. 2007).  Nonetheless, there is authority for the position that issues of law are binding on subsequent courts even if rendered in the context of a preliminary injunction appeal.  *Id*. (citing 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4478.5 (2002)).

Here, the district court's deference to determinations made in our prior disposition is further supported by the rule of mandate.  *See United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007) (commenting that the mandate doctrine is "similar to, but broader than, the law of the case doctrine" and that "while both doctrines serve an interest in consistency, finality and efficiency, the mandate rule also serves an interest in preserving the hierarchical structure of the court system").  *See also United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995). Accordingly, the district court properly deferred to our prior memorandum disposition on issues of law and on issues where TCS made identical arguments based on identical evidence that were addressed in that disposition.

We do not, however, rest our decision on this basis, because on de novo review of the record we find that the district court properly granted summary

4

judgment to the Forest Service.  *See Ranchers Cattlemen*, 499 F.3d at 1114-15.

**2**.  TCS's first challenge on appeal to the approval of the Logjam Project is that the Forest Service violated NEPA's requirement that it take a "hard look" at the cumulative impacts of the project by failing to disclose the cumulative environmental impacts from six logging projects currently planned by the Forest Service, as well as from past logging and road building on non-federal lands.

We do not find TCS's arguments persuasive.  The future logging projects identified by TCS involve less than 300 acres, but past harvests in the Tongass National Forest involve over 10,000 acres, and the Logjam Project itself will involve 3,422 acres.  The Draft Environmental Impact Statement ("DEIS") listed the six future logging projects as well as the planned harvests on lands owned by Alaska.  It devoted eleven pages to the impact on the aquatic environment, discussed the cumulative impact for each of the alternatives under consideration, and is supported by an appendix that lists projects "in the Logjam Timber Sale Cumulative Effects Area."  Although TCS alludes to other future projects, they appear to be too indefinite to allow a study of their cumulative impact on the Logjam Project.  In sum, TCS has not shown that the Forest Service did not take a "hard look" at the cumulative impacts of future projects together with the Logjam Project.

Furthermore, it does not appear that TCS raised concerns about the cumulative impacts from these future projects before the Forest Service. Neither TCS's administrative appeal of the Logjam Project nor any of the appellants' objections to the DEIS mentioned the six timber sales on federal land or the two sales on state land. This failure to focus the Forest Service's attention on the treatment of the cumulative impact of future projects may well bar TCS from raising the matter before this court. *See Buckingham v. Sec'y of U.S. Dep't of Agr.*, 603 F.3d 1073, 1080 (9th Cir. 2010) (plaintiff barred from raising argument in judicial proceeding because it failed to raise it with the Forest Service "with sufficient clarity to allow the [agency] to understand and rule on the issue").

TCS also argues that the Forest Service failed to take a "hard look" at the cumulative impacts of future timber sales by "tiering" to a non-NEPA document and by aggregating cumulative impacts. It is true that we have prohibited an environmental impact statement from "tiering" to a non-NEPA document, *see Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 801-11 (9th Cir. 1999), and *League of Wilderness Defenders v. U.S. Forest Serv.*, 549 F.3d 1211, 1219 (9th Cir. 2008). However, it is not clear whether the FEIS's citations to certain supporting documents constitute "tiering" in the sense of deferring to the supporting documents to address the impacts of the project, or constitute references

6

to specialist reports prepared specifically for an environmental impact statement as permitted by 40 C.F.R. § 1502.21. Similarly, TCS has not shown that the aggregation of cumulative impacts, which the Ninth Circuit allows for past timber harvests, *see Ecology Ctr. v. Castaneda*, 574 F.3d 652, 667 (9th Cir. 2009), may not be applied to harvests that have already been approved under a separate environmental impact statement. In any event, there is no suggestion that the Forest Service hid, or failed to consider, any relevant information regarding cumulative impacts.

Finally, even if we were to find some merit to some aspect of TCS's arguments concerning the cumulative impact of future projects, we would still deny TCS relief on the ground that the error was harmless. In *Shinseki v. Sanders*, 129 S. Ct. 1696, 1705-06 (2009), the Supreme Court clarified that to set aside an agency decision as being based upon an error, the plaintiff must show that the error was not harmless. We recently reiterated that "the failure to provide notice and comment is harmless only where the agency's mistake clearly had no bearing on the procedure used or the substance of decision reached." *Cal. Wilderness Coalition v. U.S. Dept. of Energy*, 631 F.3d 1072, 1090 (9th Cir. 2011) (internal quotation marks and citations omitted). Under NEPA, we will not grant relief for a violation of procedure if "the decision-maker was otherwise fully informed as to

the environmental consequences and NEPA's goals were met." *Laguna Greenbelt, Inc. v. U.S. Dep't of Transp.*, 42 F.3d 517, 527 (9th Cir. 1994). Here, in light of the minimum acreage involved, the Forest Service's consideration of the impacts, and the parties' focus on other issues, any error in the presentation of the cumulative impact of future projects would not warrant relief.

**3.** TCS's second argument on appeal concerning the Forest Service's approval of the Logjam Project is that the Forest Service violated NEPA by failing to disclose the concerns of the Alaska Department of Fish and Game ("ADF&G") about wolf mortality. Specifically, TCS asserts that the DEIS failed to state that ADF&G had concerns about wolf mortality, that this resulted in challenges to the DEIS being focused on wolf mortality concerns rather than discussing alternatives, and that the FEIS, while acknowledging ADF&G's concerns, did not do so adequately.

We do not find TCS's arguments convincing. The DEIS disclosed that (a) wolf hunting and trapping occurs in the area, (b) roads provide access for hunters and trappers, and (c) the road densities for the area exceeded the recommended density level. Furthermore, it appears that appellants were aware of ADF&G's concerns and addressed them in their comments on the DEIS. Thus, the DEIS, despite its misstatement of ADF&G's position, contained enough information to

8

elicit extensive detailed public comments on the wolf mortality issue, and thus served "the NEPA goals of public participation and informed decision making." *Westlands Water Dist. v. U.S. Dep't of the Interior*, 376 F.3d 853, 874 (9th Cir. 2004).

Moreover, a review of the FEIS reveals that the Forest Service gave wolf mortality the requisite "hard look." The FEIS (a) recognizes the concerns of the ADF&G biologists, (b) notes that the Forest Service and ADF&G are working on wolf mortality concerns on a broader basis than the project, (c) explains why the harvest data and wolf management reports do not support a wolf mortality concern in the Logjam area, (d) discusses a number of options that ADF&G has for regulating the hunting of wolves, and (e) explains why much of the wolf hunting in the Logjam Project is not explained by the density of roads. The district court properly found that TCS had not shown that the Forest Service failed to take a "hard look" at wolf mortality.

**4.** TCS's third issue on appeal also concerns wolf mortality and alleges that the Forest Service violated the National Forest Management Act ("NFMA") by arbitrarily concluding that wolf mortality was not a concern, failing to consider the unlawful hunting of wolves, failing to consider that closing the project area to hunting will not reduce wolf mortality, and failing to prepare a wolf habitat

9

management program prior to approving the Logjam Project.

TCS's arguments are not persuasive. The record reveals that the Forest Service does not deny that wolf mortality is a concern. Rather, the record shows that the Forest Service is working with ADF&G to address the concern on a broader level than this particular logging project. An appendix to the FEIS details why approval of the Logjam Project will not compromise the wolf population. Also, the regional supervisor for ADF&G confirms that the ADF&G and the Forest Service are working together to develop a wolf management plan and that the Logjam Project "does not trigger an immediate conservation concern." Accordingly, our independent review of the record leads us to conclude that the Forest Service reasonably determined that it did not have to prepare a wolf habitat management program in advance of implementing the project. TCS has not shown that the Forest Service acted arbitrarily or in violation of the NFMA in approving the Logjam Project.

**5.** TCS's final contention on appeal is that the Forest Service acted arbitrarily in analyzing the impact of the project on deer winter habitat. Specifically, TCS asserts that in its model for determining the effect of the project on deer habitat, the Forest Service (a) first correctly excluded non-federal lands for the estimation of habitat capability, (b) recognized that non-federal land have a

presumed zero habitat capability, and (c) then "reported the habitat capability it calculated for just federal lands to be representative of the whole" area, resulting in an overcalculation of capability. The Forest Service responds that the deer model is only one tool for assessing management impacts on deer, and denies that it committed any material methodological error.

We need not determine whether the Forest Service committed an actual computation error of the habitat capability of the Logjam Project area because: (1) it is not clear that TCS raised this claim before the Forest Service, *see Buckingham*, 603 F.3d at 1073; (2) even if the Forest Service committed a methodological error, the record shows that it nonetheless gave the impact of the Logjam Project on deer habitat the requisite "hard look;" and (3) the distortion due to the computation error, if it occurred, was harmless. The ADF&G notes that it and the Forest Service reviewed the deer model, the model tends to overestimate the impact from timber harvests, and that the deer harvest in 2008 was the highest recorded in the last decade. Furthermore, as non-federal land constitutes only two percent of the Logjam Project area, the maximum distortion due to the alleged computation error would appear to be only two percent. TCS has the burden of showing that this alleged error was not harmless. *Shinseki*, 129 S. Ct. at 1705-06. Here, in light of all the other considerations that went into the FEIS, any error in the computation of

11

the deer model for the Logjam Project had no bearing on the Forest Service's decision.

The district court's grant of defendants' cross-motions for summary judgment is **AFFIRMED**.