FILED
United States Court of Appeals
Tenth Circuit

September 10, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ANGELIQUE HARRIS,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

        Defendant-Appellee.

No. 11-5151
(D.C. No. 4:10-CV-00611-FHM)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**,
Circuit Judge.

---

Angelique Harris sought children's social security benefits and supplemental

security income based on allegations of a hearing disorder, bipolar disorder, and low

IQ. An administrative law judge (ALJ) denied benefits, finding that although

Ms. Harris had three severe impairments (borderline intellectual functioning, mood

disorder, and bipolar disorder), she had the residual functional capacity (RFC) to

---

[*]       After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

perform a full range of work at all exertional levels provided that she was limited to "simple routine tasks and only occasional public interaction." App'x II at 23. Ms. Harris was nineteen years old at the time of the ALJ's decision. The Social Security Administration's Appeals Council denied review, a district court later affirmed, and Ms. Harris has appealed. Our task is limited to determining whether the agency's "factual findings are supported by substantial evidence and whether correct legal standards were applied." *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). In conducting our review, we cannot "reweigh the evidence" or "substitute our judgment for that of the agency." *Id.* (internal quotation marks omitted).

Ms. Harris's first argument concerns a hypothetical question the ALJ posed to a Vocational Expert (VE): whether a nineteen-year-old with a high school education, no prior relevant work, and no exertional limitations could perform any work if she were limited to simple, routine tasks and only occasional public interaction. In response, the VE listed a number of unskilled jobs such an individual could perform, including maid, hand packager, sorter, assembler, and laborer. The ALJ relied on the VE's testimony in determining that Ms. Harris was not disabled at step five of the five-step sequential analysis applicable to social security claims. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing five-step evaluation process). Ms. Harris contends the ALJ should have asked the VE to consider that, despite

having graduated from high school, she reads at grade level 4.7, spells at grade level 3.7, and has a full-scale IQ of 71. She concludes that omitting this information means the VE's response does not provide substantial evidence in support of the ALJ's step-five determination.

We disagree. In order for a VE's response to a hypothetical question to constitute substantial evidence supporting an ALJ's disability determination, the question must "relate with precision all of [the] claimant's impairments." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (internal quotation marks omitted). The ALJ's hypothetical did that here. First, it is indisputable that Ms. Harris actually graduated from high school, albeit with almost half of her time spent in special education classes for all core subjects. Hence, it was proper for the ALJ to inform the VE that Ms. Harris had a high school education. Second, there is substantial evidence supporting the limitation in the ALJ's hypothetical to simple, routine tasks to the extent that limitation was meant to account for Ms. Harris's IQ and literacy level.

The ALJ credited an assessment by Dr. B. Todd Graybill, who evaluated Ms. Harris at the agency's request. Dr. Graybill administered an IQ test, which yielded a verbal score of 74, a performance score of 73, and a full-scale score of 71, and he reported that Ms. Harris's attention and concentration were "significantly impaired" and her social skills "naïve." App'x II at 330. Nonetheless, he opined that Ms. Harris "was able to understand, retain, and follow simple directions," and that

- 3 -

she was "able to read, write, and perform simple arithmetic calculations." *Id.* at 329. The ALJ also gave weight to a mental RFC assessment completed by a non-examining state-agency physician and two non-examining state-agency psychologists, who found Ms. Harris not significantly limited in her ability to make simple, work-related decisions; to understand, remember, and carry out simple instructions; to maintain attention and concentration for extended periods; and to sustain an ordinary routine without special supervision.

In contrast, the ALJ rejected almost all of a mental RFC assessment prepared by Ms. Harris's treating physician, Dr. John Mallgren, who found that she had marked limitations in nine mental activities and moderate limitations in the remaining four. Except for Dr. Mallgren's opinion that Ms. Harris had poor insight and judgment, which the ALJ found supportive of the limitation to simple, routine tasks, the ALJ reasoned that Dr. Mallgren's assessment was not consistent with the objective medical evidence, and Ms. Harris has not challenged the ALJ's rejection of that assessment. We therefore conclude that substantial evidence supports the limitation to simple, routine tasks despite Ms. Harris's IQ score and literacy level, and the ALJ was not required to include information regarding those characteristics in the hypothetical to the VE in order to rely on the VE's responses as substantial evidence supporting the step-five finding.[1]

_____

[1]    Before proceeding to Ms. Harris's next argument, we pause to acknowledge the Commissioner's argument that she has made no attempt to show that omitting her

(continued)

Ms. Harris next claims that the limitation in the ALJ's RFC to simple, routine tasks is not supported by substantial evidence for another reason: the evidence shows she needs step-by-step instructions and close supervision to complete almost any work-related task successfully. She claims that those limitations are not consistent with the basic mental abilities required to perform simple, routine tasks. We again disagree. Substantial evidence supports the limitation to simple, routine tasks as it relates to Ms. Harris's need for instructions and supervision. Among that evidence are the findings of Dr. Graybill and the state-agency non-examining reviewers, discussed above. Further, the ALJ considered, in detail, the many treatment notes

IQ and literacy level from the hypothetical prejudiced her with regard to the unskilled jobs identified by the VE that provided the basis for the ALJ's step-five finding. Indeed, the only statement in her briefs we perceive as approaching such a showing of prejudice is that, although it is clear a high school graduate could perform the jobs the VE identified, it is unclear whether someone with Ms. Harris's IQ and literacy level could. *See* Aplt. Opening Br. at 11-12. Contrary to her argument, placing the burden on Ms. Harris to show prejudicial error is not tantamount to shifting the Commissioner's step-five burden to her. The burden to show prejudicial error on appeal rests with Ms. Harris. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). In any event, our disposition of Ms. Harris's first issue is based on the evidence, not on any failure by her to show prejudicial error. Nor does our foregoing analysis and conclusion involve the doctrine of harmless error, which Ms. Harris claims the Commissioner has relied on. That doctrine permits us "to supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). The ALJ considered Ms. Harris's IQ and literacy level and accounted for them in the hypothetical with the restriction to simple routine tasks, a finding that, as we have concluded above, is supported by substantial evidence.

- 5 -

from Grand Lake Mental Health Center, where Ms. Harris was seen between August 2008 and January 2010. Most of those notes show that Ms. Harris was oriented, was euthymic in mood with appropriate affect, had a fair or good attention span, had a linear thought process, and was doing well on medications. Although some of the treatment notes indicate poor attention span, slowed thought process, or racing thought process, we cannot say, in view of the record evidence as a whole, that those few notes overwhelm the other evidence supporting the ALJ's finding that Ms. Harris has the mental RFC to perform simple, routine tasks. *See Wall*, 561 F.3d at 1052 (explaining that our review for substantial evidence "must be based upon the record taken as a whole" and that "evidence is not substantial if it is overwhelmed by other evidence in the record" (brackets and internal quotation marks omitted)).

The RFC limitation to simple, routine tasks is also substantially supported by non-medical opinions, to the extent that the ALJ gave any weight to those opinions. The ALJ considered a letter from Ms. Harris's construction-trades instructor at a vocational technology school, where Ms. Harris was in her sixth semester of a program normally completed in four semesters. The instructor stated he modified Ms. Harris's curriculum by giving her extra time, limiting her reading "by orally explaining instructions and materials," modifying her grading, and limiting her homework. App'x II at 95. The ALJ rejected the instructor's opinion that Ms. Harris "would probably need some kind of supported employment" to work successfully,

*id.*, because that opinion was beyond the instructor's expertise, but otherwise the ALJ considered the instructor's letter to support the RFC finding.

The ALJ also considered the testimony of Ms. Harris's older sister, who was Ms. Harris's guardian and with whom Ms. Harris lived. Ms. Harris's sister testified that Ms. Harris has a problem listening to authority figures, that she must be constantly supervised when doing chores or cooking, and that she performs household chores poorly and burns food when cooking. The ALJ gave little weight to that testimony because it was inconsistent with the record evidence, apparently including Ms. Harris's own contrary reports of her ability to do household work, and because Ms. Harris's sister, who, together with her husband, was collecting disability benefits, may have been motivated by the possibility of secondary gain to exaggerate Ms. Harris's limitations.

Ms. Harris points out that the ALJ did not discuss the opinion of Ms. Harris's special education teacher that she had serious problems learning and applying new material and "requires simplified instructions broken down into chunks." *Id.* at 361-62. Nor, as Ms. Harris further notes, did the ALJ discuss an observation set out in a Grand Lake treatment note that Ms. Harris's "cognitive limitations make verbal exchanges difficult due to lack of understanding." *Id.* at 231. But these opinions and observations are not inconsistent with the limitation to simple, routine tasks set out in the ALJ's RFC finding, and an ALJ is not required to discuss every piece of evidence consistent with the ALJ's findings. *See Clifton v. Chater*, 79 F.3d

- 7 -

1007, 1009-10 (10th Cir. 1996) (explaining that "an ALJ is not required to discuss every piece of evidence" but the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").

Ms. Harris's final argument concerns the ALJ's adverse credibility finding. She first contends that the ALJ's finding regarding the credibility of her claim to need step-by-step instructions and close supervision violates the requirement that a credibility finding be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings," *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted). We see no error.

The ALJ tied her credibility finding to substantial evidence in the record. The ALJ found that Ms. Harris was not credible regarding her daily activities. At the hearing, she testified to fairly limited activities, stating that other than attending school a few hours a day, she just laid around the house. But elsewhere in the record, in particular in her filings with the agency and in the information she provided to Dr. Graybill, she stated she cooked, performed household chores when provided step-by-step instructions, mowed the yard, talked on the phone, visited friends, swam, played football, attended school, attended church, and went shopping. It was proper for the ALJ to consider inconsistency between Ms. Harris's hearing testimony and her filings when evaluating her credibility. *See* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."); *id.*

- 8 -

("The [ALJ] must also look at statements the individual made to [the agency] at each prior step of the administrative review process[.]").

The ALJ also discussed Ms. Harris's testimony that, while working at an Arby's restaurant for a short while during high school, she gave a customer five dollars in nickels because she could not count out five one dollar bills, characterizing it as "inconsistent and unpersuasive, and [apparently] more an example of her not wanting to follow directions as opposed to being unable to follow directions." App'x II at 29. That characterization is consistent with other evidence the ALJ discussed, including Ms. Harris's own statement in a function report she submitted to the agency that she does not like people telling her what to do; her report to a Grand Lake counselor that she "ha[d] been unable to maintain employment because she thinks she should only be doing what her job title indicates and nothing else," *id.* at 232; and her sister's testimony that she does the opposite of what authority figures tell her to do. In short, the ALJ adequately tied her adverse finding regarding the credibility of Ms. Harris's claim to need step-by-step instructions and close supervision to substantial evidence in the record. To the extent Ms. Harris's argument requires us to reweigh the evidence, we are prohibited from doing so. *Barnett*, 231 F.3d at 689.

Ms. Harris also takes issue with the ALJ's statement that her activities of daily living could not be "objectively verified," App'x II at 28, contending that this shows

the ALJ applied an improper standard.  We previously rejected this same argument in

*Wall v. Astrue*, concluding that

> the ALJ's statement that Claimant's daily limitations could not be "objectively verified with any reasonable degree of certainty" did not state a standard by which the ALJ made his adverse determination of Claimant's credibility.  Rather, the ALJ's statement was merely a common sense observation that the ALJ would not treat Claimant's testimony as "strong evidence" of her disability due to his prior determination that Claimant's testimony was not "fully credible." Claimant simply misconstrues the ALJ's comment in suggesting otherwise.

561 F.3d at 1070 (citations omitted).  We reach the same conclusion here.

Ms. Harris's final contention about the ALJ's adverse credibility finding focuses on the ALJ's statement that "[a]nother factor influencing the conclusions reached in this decision is [Ms. Harris's] generally unpersuasive appearance and demeanor while testifying at the hearing," App'x II at 29.  Ms. Harris contends that the ALJ did not state specifically what it was about her demeanor that caused the ALJ to find her not credible.  But the ALJ emphasized that Ms. Harris's demeanor was only one factor in the credibility finding, as is proper, *see Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (observing that while an ALJ "may not rely solely on his personal observations to discredit a plaintiff's allegations, he may consider his personal observations in his overall evaluation of the claimant's credibility").  Based on this acknowledgment, and in view of the other evidence supporting the ALJ's adverse credibility finding, we conclude that the ALJ adequately tied her adverse credibility finding to substantial evidence in the record even without consideration of

Ms. Harris's demeanor. Accordingly, we need not determine whether the ALJ erred

in not specifically stating what it was about Ms. Harris's demeanor that contributed

to the adverse credibility finding.[2]

The judgment of the district court is AFFIRMED.


Entered for the Court


Jerome A. Holmes
Circuit Judge

---

[2] Ms. Harris also claims that the ALJ did not address a letter from her manager at Arby's. The manager reported that Ms. Harris had a number of performance problems, including following instructions and making simple change, and that Ms. Harris quit because she was unable to handle others watching her constantly and telling her what to do. However, the ALJ never saw that letter; it was submitted to the Appeals Council after the ALJ had issued her decision. The Appeals Council concluded that it did not support a more restrictive RFC than that found by the ALJ. In the absence of argument that the Appeals Council erred in its determination, we will not speculate on the matter.