991 F.2d 805
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Freddie A. CASON, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D.,* Secretary of
Health and Human Services, Defendant-Appellee.
 No. 92-7105.
 United States Court of Appeals, Tenth Circuit.
 April 21, 1993.
 
 Before McKAY, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.
 ORDER AND JUDGMENT**
 McKAY, Chief Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff Freddie Cason appeals from a district court order affirming the Secretary of Health and Human Services' denial of disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. On appeal, it is our responsibility to review the record "to determine whether the findings are supported by substantial evidence and whether the Secretary applied correct legal standards." Pacheco v. Sullivan, 931 F.2d 695, 696 (10th Cir.1991). For reasons discussed below, we conclude this cause must be remanded to the Secretary for further proceedings.
 
 
 3
 Plaintiff's disability claim is based primarily on the exertional and nonexertional consequences of a cervical spinal injury that necessitated a discectomy and subsequent fusion with a bone graft in June of 1987.[1] After a brief period of relief following the surgery, plaintiff has consistently complained of neck pain, radiating down his shoulders into his hands and down his back into his legs. As a result of this condition, he alleges he cannot turn his head significantly in either direction or look up or down on a sustained basis, is unable to sit or stand for prolonged periods of time, and has some difficulty using his arms and hands to open doors, hold objects, or, more recently, to write. R.Vol. II at 61-65; 71-75. He also claims various additional impairments secondary to his pain, id. at 63, 73-74, and his prescribed medication, id. at 70, 75-82.
 
 
 4
 The administrative law judge (ALJ) issued two decisions in this case, each denying benefits at step five of the Secretary's sequential evaluation process, see Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir.1988) (describing five steps in detail). At the time of the ALJ's first decision, the pertinent medical record consisted of reports, with accompanying documentation, prepared by plaintiff's surgeon, Dr. Taylor King Smith, see R.Vol. II at 165-68, 176-84, and an examining physician, Dr. Peter Mandell, see id. at 154-62, as well as some clinical notations of plaintiff's more recent treating physician, Dr. Stephen Rowlan, see id. at 185-87. These materials (and other medical documentation added to the record later) demonstrate that plaintiff's cervical range of motion was, as expected, significantly restricted by the surgical fusion.[2] They also provide some support for plaintiff's upper extremity complaints, though not necessarily for the degree of impairment alleged. See id. at 158 (Dr. Mandell recognizing "some shoulder disability"), 184 (Dr. Smith finding plaintiff "permanently and partially disabled, because of his persistent neck and hand symptoms"), 186 (Dr. Rowlan noting "some minimal carpal tunnel syndrome on the right [side]" based on EMG), 187 (Dr. Rowlan finding "some decrease in grip strength on the left [hand]"), and 189 (EMG report indicating minimal carpal tunnel syndrome on right side). As for plaintiff's claim of spinal-related postural limitations, and more general allegations of secondary impairments caused by pain and medication, the materials submitted to the ALJ contain little if any evidence to establish a disability on these bases. Following a very brief hearing in which only plaintiff testified, see R.Vol. II at 60-66, the ALJ found that plaintiff could perform the full range of sedentary work and, therefore, was not disabled under "[t]he Secretary's Regulations," presumably a reference to the Secretary's medical-vocational guidelines (grids), see R.Vol. II at 45-49 (decision of January 30, 1989).
 
 
 5
 The Appeals Council reversed the ALJ's initial decision, stating that (1) the ALJ neglected to discuss application of the grids after making his residual functional capacity (RFC) determination at step five, (2) plaintiff's allegations of severe pain were not properly evaluated, particularly in terms of his daily activities, medication, and treatment, and (3) the record was not sufficiently clear on the question of plaintiff's ability to perform a full range of sedentary work. Id. at 38. The Appeals Council directed the ALJ to "obtain a neurological consultative examination and a medical assessment of the claimant's ability to perform basic work-related activities," as well as "vocational expert testimony to determine whether the claimant's remaining occupational base represents a significant number of jobs in the national economy and whether the claimant has the capacity to perform substantial gainful activity in a significant number of the jobs administratively noticed in [the grids]." Id. at 39.
 
 
 6
 On remand from the Appeals Council, the ALJ obtained a neurological examination and report from Dr. Retia Edmonson, see id. at 193-98, and some more recent clinical notes from Dr. Rowlan, see id. at 191-92. Doctor Edmonson confirmed the limited mobility of plaintiff's cervical spine, which she found to be only 30% of normal in all directions. Id. at 194. As for the rest of plaintiff's complaints, Dr. Edmonson noted "a severe degree of tenderness and spasm of the cervical, trapezius and rhomboid musculature bilaterally ... more marked on the right side," id., but found no objective basis for plaintiff's work-related subjective impairments, id. at 196-97, and suspected plaintiff was simply "not properly motivated" to perform a right hand grip test and various ambulatory/postural tests, id. at 194-95. She concluded that, while plaintiff "presents with a multiplicity of subjectivities primarily related to his musculoskeletal system and there is some psychological overlay in his manner and performances ... [, t]here is no evidence of a neurological lesion or deficit." Id. at 195.
 
 
 7
 In addition to hearing some further testimony from plaintiff and, very briefly, from plaintiff's wife, the ALJ questioned vocational expert Russell Bowden. After Bowden listed several areas of employment, including benchwork assembly, inspecting and quality control, and unskilled clerical, available to plaintiff provided he could perform the full range of sedentary work, id. at 89, the ALJ asked the expert, "Assuming that I should find from the medical record ... that [plaintiff] should avoid activities which require repetitive neck movements and jarring of the neck,[3] would this contraindicate any of the jobs you had in mind?" Id. at 90. Bowden responded, in summary, "You would eliminate the sedentary jobs and benchwork assembly, and depending on the degree of limitation, you might or might not eliminate the inspecting and unskilled clerical." Id. at 91. To anticipate a point we will return to shortly, Bowden unfortunately never specified the critical "degree of limitation" at which he thought the remaining available jobs would be precluded (to establish a bench mark for assessing the occupational effect of plaintiff's demonstrated cervical impairment), nor did the ALJ cure this omission from the other direction by following up with a hypothetical question incorporating a more specific degree of cervical impairment based on the medical evidence.
 
 
 8
 In his second decision, which was left undisturbed by the Appeals Council, the ALJ summarized the basis for his determination of nondisability as follows:
 
 
 9
 In response to the administrative law judge's hypothetical questions, the vocational expert testified that if the claimant were limited to a maximum of sedentary work, ... claimant would be able to perform sedentary types of work which existed in significant numbers in the national economy. Although claimant continues to have some residual pain in his cervical spine and upper extremities, the evidence does not support a finding that he has any significant limitation in his ability to use his hands to do sedentary types of work. Although he should not engage in work requiring undue strain on the cervical spine ..., the evidence does not reflect a level of pain or restriction of range of motion of the cervical spine which would preclude the performance of the sedentary types of work suggested by the testimony of the vocational expert ... [, such as] unskilled bench work, quality control work, and clerical type work.
 
 
 10
 Id. at 29. Thus, although the ALJ expressly referred only to the grids in the formal findings concluding his decision, see id. at 29-30, his underlying analysis evidently involved substantial reliance on the vocational expert's testimony. Consequently, the ALJ's determination need not be reversed for erroneously relying exclusively on the grids.[4]
 
 
 11
 There are, however, two other serious problems with the ALJ's decision. The first is evident from a direct comparison between our quotations from the ALJ's analysis and the vocational expert's testimony. After the expert stated without qualification that the (established) limitation on work involving repetitive neck movements would eliminate the bench work jobs he had previously identified, it was error for the ALJ to reach precisely the opposite conclusion regarding this particular line of work. See, e.g., Stewart v. Sullivan, 881 F.2d 740, 744-45 (9th Cir.1989); Lamb v. Bowen, 847 F.2d 698, 704 (11th Cir.1988); cf. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir.1990) (ALJ not bound by vocational expert's opinion if premised upon erroneous characterization of claimant's impairment).
 
 
 12
 We have already alluded to the second, broader problem with the ALJ's analysis, i.e., the lack of a direct, decisive conclusion from the vocational expert regarding the full occupational effect of plaintiff's cervical impairment. Unless and until either (1) the expert identifies a reasonably specific level of employment-precluding (or employment-permitting) limitation against which the ALJ can assess the effect of plaintiff's condition, or (2) the ALJ incorporates a reasonably specific finding of plaintiff's cervical limitation in a proper hypothetical definitively answered by the vocational expert, we cannot say substantial evidence supports a determination of nondisability at step five.
 
 
 13
 While we have focused attention on the inadequacy of the expert testimony regarding the neck stress limitation recognized by the ALJ, we do not intend thereby to restrict full reconsideration of this case on remand. We note, in particular, that the record clearly establishes a range-of-motion component to plaintiff's cervical impairment that may not have been captured adequately in the hypothetical formulated by the ALJ, which could be understood as limited, rather, to concerns about trauma and reinjury. Furthermore, it might be helpful for the ALJ to elaborate on his generalized and arguably incomplete finding that plaintiff's upper extremity problems (extending from shoulders to hands) do not cause "any significant limitation in his ability to use his hands to do sedentary types of work," id. at 29. Perhaps a more specific characterization of this apparently insignificant limitation could be included in the hypothetical inquiry put to the vocational expert, whose expertise consists in gauging the occupational effect of such physical limitations, however minor they may seem to the lay person. Finally, in light of the procedural posture of the case, it would be appropriate also to address the medical report of Dr. Shapiro, discussed supra note 1.
 
 
 14
 The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED and REMANDED to the Secretary for further proceedings consistent with this order and judgment.
 
 
 
 *
 Donna E. Shalala is substituted for former Secretary of Health and Human Services Louis W. Sullivan, M.D., pursuant to Fed.R.App.P. 43(c)(1)
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The record also contains a medical report discussing rectal, prostate, and perineal problems that, in the examining physician's opinion, should restrict plaintiff to work in which he does not have to sit for long periods of time and can get up, walk around, and have free access to bathrooms at regular intervals. See R.Vol. II at 169-74 (July 20, 1987, report of Dr. Norman Shapiro). Given that, as we discuss later, the administrative law judge assigned plaintiff a sedentary residual functional capacity, this report would appear to be a significant piece of evidence. However, the ALJ summarily discounted plaintiff's "several complaints, such as hemorrhoids, ... related to prolonged sitting," because "the record does not reflect that this has been of any material consequence on or after April 13, 1987, claimant's alleged onset date of disability[,]" id. at 27, without even referring to this report, which is based on an examination done on June 26, 1987, id. at 169. Nevertheless, plaintiff, perhaps for good reasons unapparent to us, has not raised the point on appeal
 
 
 [2]
 At one point, the ALJ stated that "Dr. Mandell found claimant had some limitation of range of motion involving the cervical spine, but not of a marked degree." R.Vol. II at 27. Actually, Dr. Mandell quantified plaintiff's cervical extension, right and left rotation, and bending capabilities, respectively, as only 33%, 25%, 33%, and 25% of normal, and concluded that, following the fusion, "he was left with significant restrictions of cervical motion." Id. at 156, 158
 
 
 [3]
 The record clearly supports this work restriction. See R.Vol. II at 184 (Dr. Smith, who conducted plaintiff's surgery and post-surgical treatment, advising plaintiff to avoid activities that involve "a lot of stress and strain of his neck," or "repetitive neck movements or jarring of the neck")
 
 
 [4]
 As discussed presently above, the vocational expert recognized that plaintiff's established cervical limitation would preclude at least one whole range of identified jobs in his RFC category and, depending on severity, could preclude the others as well. This circumstance forecloses any mechanical reliance on the grids. See Trimiar v. Sullivan, 966 F.2d 1326, 1332 (10th Cir.1992); Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir.1991)