**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 26, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MISTY M. ENDRISS,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

      Defendant-Appellee.

No. 12-6126
(D.C. No. 5:10-CV-01401-L)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

---

Misty M. Endriss appeals from an order of the district court affirming the

Commissioner's decision denying her application for social security disability

benefits. We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g) and

we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.

Ms. Endriss injured her neck in 2001 and had a two-level cervical fusion. She returned to work in 2003 and worked until she injured her neck again in August 2006. She underwent a second surgery for a one-level cervical fusion in July 2007. She returned to work following her surgery but resigned her position in October 2007.

Ms. Endriss filed her application for benefits on July 23, 2008, alleging disability beginning October 30, 2007, when she was thirty-six years old. The agency denied Ms. Endriss' application initially and on reconsideration. Ms. Endriss then received a de novo hearing before an administrative law judge (ALJ).

The ALJ found that Ms. Endriss had the following severe impairments: cervical degenerative disc disease with bilateral upper extremity radiculopathy, status post two cervical fusions; and lumbago. The ALJ determined, however, that Ms. Endriss retained the residual functional capacity (RFC) for light work. He denied her application for benefits, concluding that she was not disabled at step four of the analysis because she could perform her past relevant work as a credit card clerk (sedentary), a loan supervisor (sedentary), a security manager (light), and a receiving manager (light). *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining five-step process for evaluating claims for disability benefits). The Appeals Council denied review and Ms. Endriss appealed to the district court. The district court upheld the ALJ's decision. This appeal followed.

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). On appeal, Ms. Endriss argues that the ALJ failed to apply the correct legal standards to his evaluation of her medical source opinions. She also asserts that the ALJ's RFC assessment is not supported by substantial evidence.

A. Treating Physician Opinions

In *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), we explained that an ALJ should follow a sequential analysis when considering the opinion of a treating physician. First, the ALJ determines whether the opinion is entitled to controlling weight. *Id*. If the opinion is not entitled to controlling weight, the ALJ should next weigh the opinion considering the six factors in 20 C.F.R. § 404.1527. *Watkins*, 350 F.3d at 1300-01. Finally, the ALJ "must give good reasons in [the] notice of determination or decision for the weight he ultimately assigns the opinion." *Id*. at 1301 (internal quotation marks omitted). In *Watkins*, we remanded for further proceedings because we could not "meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion." *Id*.

In *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), the claimant argued that the ALJ erred by failing to provide an analysis of the six factors

identified in § 404.1527 for evaluating medical source opinions. As we explained, however, "[t]hat the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review." *Oldham*, 509 F.3d at 1258. We further noted that the claimant "cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Id.* We concluded that the ALJ had provided good reasons for the weight he gave to the medical source opinions and that nothing more was required. *Id.*

### 1. *Dr. Munneke*

Dr. Munneke treated Ms. Endriss for pain management from July 2008 to July 2009. The ALJ gave controlling weight to Dr. Munneke's opinion that Ms. Endriss can stand and/or walk for six of eight hours, that she can only occasionally kneel, crouch, and crawl and that she must limit her exposure to moving machinery. But the ALJ did not give controlling weight to the remainder of Dr. Munneke's opinion, including his opinion that Ms. Endriss could lift only ten to fifteen pounds; that she could only sit or stand for one hour at a time without changing positions; that she had limitations in reaching, pushing, and pulling; and that she should not be exposed to temperature extremes. The ALJ concluded that this portion of the opinion was entitled to "little weight" because it was "inconsistent with objective medical evidence of record, showing improvement in the claimant's overall condition since

- 4 -

her second neck surgery in July 2007," citing to numerous exhibits. Aplt. App., Vol. II at 20.

Ms. Endriss argues that the ALJ's reason for rejecting these additional limitations is too vague for judicial review because the ALJ did not indicate what objective evidence contradicts Dr. Munneke's opinion. She further argues that the ALJ did not consider the factors he was required to consider, and the record actually shows that Dr. Munneke's opinion is well-supported by his treatment records. We disagree with these contentions.

In support of his statement that portions of Dr. Munneke's opinion are inconsistent with the objective medical evidence, the ALJ cited to a number of exhibits in the record including exhibits 4F3, 6F1, 13F1, 13F3, 25F5, and 25F8. *See id*. Although the ALJ did not provide a contemporaneous discussion of those records, just a few pages earlier, the ALJ made the following observations about the evidence in those exhibits:

> By the end of physical therapy, the claimant was described as fifty percent improved from her pre-operative condition. Indeed, she reported only occasional numbness and tingling in her hands, she had a normal motor examination in her upper extremities, her cervical spine had fifty percent preserved range of motion, and she had a normal heel-toe gait (Exhibit 4F3). By July 2008, the claimant continued to do "reasonably well" and it was noted that she had a "good outcome" from the surgical procedure (Exhibit 6F1). After undergoing some medication changes in August and October 2008, the claimant reported doing "reasonably well" in January and February 2009 (Exhibits 13F1, 3). As of June 2009, the claimant classified her pain as only level four on a one-to-ten scale. At that time, she reported some burning and tingling in her face secondary to neck pain. Though her cervical range of motion was restricted, her shoulder strength and grip strength were

> good, and she was noted as "doing well" (Exhibit 25F5). By July 2009, the claimant continued to do "well" and she reported that she was pleased with her current level of functioning. (Exhibit 25F8).

*Id.* at 16.

Reading the ALJ's decision as a whole, the ALJ adequately explained how the objective medical evidence showed improvement in Ms. Endriss' condition after her surgery. For example, after she completed physical therapy following her surgery, Dr. Wright's treatment records reflect that she had a normal motor examination in her upper extremities, her cervical spine had a fifty percent preserved range of motion, and she had a normal heel-toe gait. *See id.*

Ms. Endriss argues that "[t]he cervical problems documented in the record support Dr. Munneke's opinion regarding restrictions in lifting, reaching, pushing and pulling, and the need to alternate between sitting and standing due to pain." Aplt. Br. at 25. But the ALJ's discussion of the record evidence indicates that although Ms. Endriss' "cervical range of motion was restricted, her shoulder strength and grip strength were good." Aplt. App., Vol. II at 16. Dr. Munneke's treatment notes reflecting good shoulder and grip strength are inconsistent with his recommended restrictions in lifting, reaching, pushing and pulling. Further, the ALJ noted that Ms. Endriss reported her pain to be a level four of ten in June 2009 and there is nothing in the treatment notes indicating that Ms. Endriss needed to alternate between sitting and standing due to pain. The ALJ correctly observed that the

objective medical evidence is inconsistent with the restrictions suggested by Dr. Munneke.

Finally, we reject Ms. Endriss' argument that the ALJ erred by failing to "provid[e] an analysis of the relevant factors, as required by law." Aplt. Br. at 24. As we noted above, there is no authority "requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham*, 509 F.3d at 1258. The ALJ stated in his decision that he "considered [the] opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." Aplt. App., Vol. II at 17. He then summarized Dr. Munneke's opinion, determined that a portion of the opinion was entitled to controlling weight but that the remainder of the opinion was entitled to little weight, and gave a good reason for the weight he ultimately assigned the opinion. Nothing more is required. *See Oldham*, 509 F.3d at 1258; *Watkins*, 350 F.3d at 1300-01.

### 2. *Dr. Wright*

Dr. Wright performed Ms. Endriss' cervical fusion surgery in July 2007. He saw her for several post-surgical visits and, in January 2008, he opined that Ms. Endriss "be released to work with permanent restrictions of lifting no more than 10 pounds, no pushing or pulling more than 10 pounds, limited overhead work." Aplt. App., Vol. II at 228. In considering Dr. Wright's opinion, the ALJ stated that he "concurs with Dr. Wright's opinion that the claimant is not disabled. However,

- 7 -

considering the objective medical evidence of record, the undersigned finds the claimant's residual functional capacity more consistent with less than the full range of light work." *Id.* at 20. Ms. Endriss argues that the ALJ failed to perform a proper analysis of Dr. Wright's opinion.

Although the ALJ was not as detailed in his treatment of Dr. Wright's opinion as he was with his treatment of Dr. Munneke's opinion, it is readily apparent from the ALJ's rationale that he gave controlling weight to Dr. Wright's opinion that Ms. Endriss could be released to work, but that he gave little weight to Dr. Wright's opinion of Ms. Endriss' functional restrictions. Dr. Wright's opinion of Ms. Endriss' functional restrictions was virtually identical to the restrictions that the ALJ had just assigned "little weight" to from Dr. Munneke's opinion. And we understand the ALJ's reference to "objective medical evidence" to mean the same evidence from the same exhibits he relied on as being inconsistent with the similar restrictions proposed by Dr. Munneke. The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting Dr. Wright's opinion. The ALJ's discussion of Dr. Wright's opinion is "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham*, 509 F.3d at 1258. We see no reversible error in the ALJ's treatment of Dr. Wright's opinion.

B.  Evidence from "other sources"

An ALJ may consider evidence from "other sources" that are not considered to be "acceptable medical sources."  SSR 06-03p, 71 Fed. Reg. 45593, 45594 (2006). Only "acceptable medical sources" can be considered a treating source, establish the existence of a medically determinable impairment, and give a medical opinion.  *Id.* Evidence from other sources like chiropractors and physical therapists, however, may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function."  *Id.*

The Social Security Administration has explained that the factors from § 404.1527, which are used to weigh opinions from "acceptable medical sources," "represent basic principles that apply to the consideration of all opinions from medical sources."  SSR 06-03P, 71 Fed. Reg. at 45595.  But the ruling also notes that "[n]ot every factor for weighing opinion evidence will apply in every case."  *Id.* Moreover, the ruling explains that "there is a distinction between what an adjudicator *must consider* and what the adjudicator *must explain* in the disability determination or decision."  *Id.* at 45596 (emphasis added).  The ruling notes that "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning."  *Id.*

1. *Chiropractor McClure*

Dr. McClure is a chiropractor who examined Ms. Endriss in connection with her worker's compensation claim in January 2007 and again in March 2008. Dr. McClure opined that Ms. Endriss "has a forty-six permanent partial impairment to the body as a whole (Exhibit 23F7) and that her 'ability . . . to earn wages at the same level as before the injury has been permanently impaired' (Exhibit 23F6)." Aplt. App., Vol. II at 20. The ALJ determined that this opinion was entitled to "little weight . . . because it fails to set forth specific functional limitations resulting from the claimant's physical impairments." *Id*.

Ms. Endriss asserts that the ALJ erred in his evaluation of Dr. McClure's opinion. The ALJ, however, complied with our case law and SSR 06-03p by explaining the weight he assigned to Dr. McClure's opinion and the reason for that weight. Ms. Endriss argues that the ALJ's reason for assigning the opinion little weight is flawed because Dr. McClure "did opine to specific limitations in [the] range of motion of her cervical spine." Aplt. Br. at 28. She asserts that these limitations "would most certainly affect [her] ability to work." *Id*. But the main purpose for using evidence from "other sources" is "to show the severity of the individual's impairment(s) and *how it affects the individual's ability to function*." SSR 06-03p, 71 Fed. Reg. at 45594 (emphasis added). We agree with the ALJ that Dr. McClure's opinion is of little value when it fails to explain how a limited range of motion in the cervical spine would affect Ms. Endriss' ability to function. We

decline to accept Ms. Endriss' non-medical opinion that her limitations "would most certainly affect [her] ability to work." Aplt. Br. at 28. The ALJ did not err in his treatment of Dr. McClure's opinion.

### 2. *Physical Therapists Cone, Mathe and Wallace*

Ms. Endriss argues that the ALJ erred by failing to discuss and weigh the findings from Ms. Cone, who was Ms. Endriss' physical therapist from October 2007 to December 2007. Ms. Endriss asserts that her treatment records from Ms. Cone confirm that she "had a significantly reduced range of motion of the cervical spine." *Id*. She contends the ALJ erred by not evaluating the weight to be given to those findings and that the ALJ erred by failing to discuss this "significantly probative evidence." *Id*. at 29. We disagree.

First, Ms. Cone did not give an opinion based on her treatment of Ms. Endriss that could be evaluated by the ALJ. Although Ms. Cone made notes in her treatment records about the limitations in Ms. Endriss' cervical range of motion, she did not opine as to how those limitations would affect Ms. Endriss' ability to function. As for Ms. Endriss' allegation that the ALJ failed to discuss probative evidence, the treatment records from Ms. Cone showing limited range of motion in Ms. Endriss' cervical spine are consistent with other medical evidence of record that the ALJ did mention. *See, e.g.,* Aplt. App., Vol. II at 16 (discussing treatment record showing that Ms. Endriss' "cervical range of motion was restricted"). The ALJ was not required to discuss Ms. Cone's treatment records. *See Clifton v. Chater*, 79 F.3d

- 11 -

1007, 1009-10 (10th Cir. 1996) ("[A]n ALJ is not required to discuss every piece of evidence.").

As for Ms. Mathe and Mr. Wallace, these physical therapists conducted a functional capacity evaluation of Ms. Endriss in January 2008 and then opined that Ms. Endriss "is capable of safely performing work up to and including the sedentary physical demand category." Aplt. App., Vol. II at 20. The ALJ "concur[red] with their opinion that the claimant is not disabled. However, considering the objective medical evidence of record, the undersigned finds the claimant's residual functional capacity more consistent with less than the full range of light work." *Id*.

Again, Ms. Endriss argues that the ALJ erred in its treatment of this opinion by not discussing all of the factors for weighing medical source evidence. The ALJ agreed with the physical therapists that Ms. Endriss could return to work and therefore she was not disabled. But the ALJ disagreed with the portion of their opinion limiting Ms. Endriss to sedentary work. The sedentary-work limitation proposed by the therapists was essentially the same as the limitations proposed by Drs. Wright and Munneke and afforded little weight by the ALJ. As we have discussed, our case law and SSR 06-03p do not require an explicit discussion of the § 404.1527 factors in the ALJ's decision. We conclude the ALJ did not err because there is sufficient information here for "a subsequent reviewer to follow the adjudicator's reasoning," SSR 06-03p, 71 Fed. Reg. at 44596.

C.  RFC Assessment

The ALJ determined that Ms. Endriss could perform light work (lift and carry twenty pounds occasionally; lift and carry ten pounds frequently; sit, stand and/or walk six hours in an eight-hour work day with ordinary work breaks) with the further limitations that she could only occasionally climb ramps and stairs, balance, kneel, or crouch; and she could never climb ladders, ropes or scaffolds.  The ALJ also determined that Ms. Endriss must avoid concentrated exposure to machinery and heights.  Ms. Endriss asserts that the ALJ's RFC assessment for light work is not supported by substantial evidence because the ALJ improperly rejected medical opinion evidence and otherwise failed to include her established lack of cervical mobility in his RFC assessment.

Although Ms. Endriss challenges the ALJ's RFC determination for light work, we note that the VE characterized two of her previous jobs as sedentary-level positions.  Ms. Endriss bears the burden of showing at step four that she is incapable of performing her past relevant work.  *See Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993).  If Ms. Endriss' past relevant work can be performed at a sedentary level, then she arguably has failed to show prejudice from any alleged error in the ALJ's RFC determination for light work.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he party that seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted." (internal quotation marks omitted)); *id*. ([T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's

- 13 -

determination."). Nevertheless, we reach the merits of her challenge and conclude that the ALJ's RFC assessment is supported by substantial evidence.

As discussed above, the ALJ properly considered the opinions from Ms. Endriss' treating physicians and other medical sources, but accorded little weight to the opinions that were inconsistent with the objective medical evidence. That evidence shows that Ms. Endriss did improve after her surgery and that she did not have functional limitations greater than those necessary to perform light work.

In September 2007, two months after her surgery, Dr. Wright's notes reflect that Ms. Endriss' neck pain was significantly improved from her pre-operative condition as she rated her overall pain as three out of ten. He released her to light work at that time with a twenty-five-pound lifting restriction. In October and December, he noted her symptoms were fifty percent improved from her pre-operative condition, she had a normal motor examination of the upper extremities, and a normal heel/toe gait. He continued to note she could be released to light work with a twenty-five-pound lifting restriction. In January 2008, Dr. Wright's treatment notes reflect the same findings in terms of her physical examination, but he modified her work restrictions to a ten-pound lifting restriction, which would place her in the sedentary category. There is no explanation in his notes for the change in her restrictions. Moreover, he noted that Ms. Endriss' functional capacity evaluation, which suggested a sedentary-work restriction, was "remarkable for an unreliable result." Aplt. App., Vol. II at 228.

- 14 -

In July 2008, Dr. Munneke examined Ms. Endriss. His treatment notes are consistent with those of Dr. Wright. He noted no neurosensory loss in the upper extremities and reflexes in the upper extremities were brisk and equal. He found her shoulder strength and upper extremity strength to be 5/5. In November 2008, Dr. Woodcock, an agency physician, reviewed the medical records and relied on Dr. Munneke's examination findings to support his opinion that Ms. Endriss could perform light work. Dr. Woodcock acknowledged that Dr. Wright had reached a different conclusion about Ms. Endriss' restrictions, but Dr. Woodcock explained that Dr. Wright's restrictions were not supported by the objective medical evidence from Dr. Munneke's July 2008 examination. Dr. Munneke's treatment notes continued to show adequate or good shoulder strength and good grip strength in January, February and June of 2009. Given the objective evidence showing normal motor functioning in her upper extremities, good shoulder and grip strength, and normal heel/toe gait, we conclude there is substantial evidence in the record to support the ALJ's RFC assessment for light work.

As for including limitations in the RFC related to cervical mobility, although the treatment notes reflect findings of restricted range of cervical motion, which the ALJ acknowledged in his decision, none of the physicians or other medical sources tied the lack of cervical mobility to specific functional limitations. Even with the restrictions in Ms. Endriss' cervical range of motion, the treatment notes continued to reflect a normal examination in the upper extremities with good shoulder and grip

strength. Ms. Endriss' own statements to Dr. Munneke do not reflect severe cervical limitations, and Ms. Endriss testified that she could do the laundry, vacuum, and dust. Although Ms. Endriss argues that "[t]he limitations in the range of motion of her cervical spine would most certainly affect [her] ability to work," she does not cite to an opinion from a medical source showing how this restricted range of cervical motion would result in specific functional limitations. Aplt. Br. at 28.[1] The ALJ did not err in failing to include additional limitations in the RFC concerning a lack of cervical mobility.

III.

We affirm the judgment of the district court upholding the Commissioner's decision denying disability benefits.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

---

[1] Ms. Endriss also argues that this court's decision in *Cason v. Sullivan*, 1993 WL 128878, at *1-*3 (10th Cir. April 21, 2003) (unpublished), supports her position that her cervical limitations must be included in her RFC. The *Cason* case is factually distinguishable as it involved a claimant with significant limitations to his daily activities that are not present in this case. *See id.* at *1 (explaining that claimant was unable to sit or stand for long periods of time, use his arm or hands to open doors, hold objects, or write). In addition, there is no overarching legal principle from *Cason* that supports Ms. Endriss' position as the case involved a fact-specific step five error involving a problem with the ALJ's hypothetical to and treatment of the Vocational Expert's testimony. *Id*. at *3. Accordingly, we do not find *Cason* to be persuasive authority. *See* 10th Cir. R. 32.1 (explaining that "[u]npublished decisions are not precedential, but may be cited for their persuasive value.").